The State v. Prather.

---

THE STATE OF KANSAS v. EARNEST PRATHER.

No. 15,983.   (100 Pac. 57.)

SYLLABUS BY THE COURT.

MISDEMEANOR—*Playing Games on Sunday—Baseball.* The playing of baseball on Sunday is not prohibited by section 2258 of the General Statutes of 1901, which provides that "every person who 'shall be convicted of horse-racing, cock-fighting, or playing at cards or game of any kind, on the first day of the week, commonly called Sunday, shall be deemed guilty of a misdemeanor, and fined not exceeding fifty dollars."

33—79 KAN.

Appeal from Johnson district court; WINFIELD. H. SHELDON, judge. Opinion filed February 6, 1909. Reversed.

*Fred S. Jackson,* attorney-general, and *J. R. Thorne,* county attorney, for The State; *J. W. Parker,* of counsel.

*C. L. Randall,* for appellant.

The opinion of the court was delivered by

PORTER, J.: The county attorney of Johnson county filed a complaint in the district court charging that "on the 14th day of July, A. D. 1907, the same being the first day of the week, commonly called Sunday . . . one Earnest Prather did then and there unlawfully and wilfully, with divers other persons whose names are to your informant and to affiant unknown, play at and play a certain game, to wit, a game of baseball, the same being played with balls and bat and with nine players on one side matched against nine players on the other side." The defendant was arrested on the charge. A motion to quash the complaint on the ground that it fails to charge an offense under the laws was denied. A jury being waived, there was a trial to the court and a judgment of conviction, from which the defendant appeals.

The single question is whether Sunday baseball is prohibited by law. This involves the construction of section 2258 of the General Statutes of 1901, under which the defendant was prosecuted. It reads:

"Every person who shall be convicted of horse-racing, cock-fighting, or playing at cards or game of any kind, on the first day of the week, commonly called Sunday, shall be deemed guilty of a misdemeanor, and fined not exceeding fifty dollars."

The state contends that the words "game of any kind" include baseball. On the other hand, the contention is that the statute must be construed strictly, and

that the meaning of the general words "game of any kind" is limited by the particular words which precede them, and that they include only games of the class or species to which horse-racing and cock-fighting belong.

The rule that penal statutes are to be construed strictly has its origin in the tender regard which the law has for the rights of the individual, and rests also on the doctrine that the power of punishment is vested in the legislature and not in the courts. (*U. States v. Wiltberger*, 18 U. S. 76, 5 L. Ed. 37; *State v. Woodruff*, 68 N. J. Law, 89, 52 Atl. 294; 26 A. & E. Encycl. of L. 658.) Strict construction of a penal statute means that the language is not to be extended by implication so as to embrace cases or acts not clearly within the prohibition of the statute.

"Game" is defined as "a contest for success or superiority in a trial of chance, skill, or endurance, or of any two or all three of these combined." (Cent. Dict.) And the word "is very comprehensive, and embraces every contrivance or institution which has for its object to furnish sport, recreation, or amusement." (4 Words & Ph. Jud. Def. 3036.) In penal statutes the word "game," however, is frequently used as synonymous with the word "gaming." In *Bagley v. The State*, 20 Tenn. 486, it was held that the word "game" in an indictment for gaming is as strong and expressive as the word "gamble," and may be used in an indictment with the same effect, because it is sufficient to characterize an act as unlawful gaming.

In the broad sense in which the word is often used it includes baseball. Giving to the language this interpretation, the statute necessarily applies to every contrivance or institution which falls within the general term. This construction would make the statute apply to every game—to authors, whist, chess, checkers, backgammon, and cribbage, even when played within the privacy of one's home, and to croquet, basket-ball, tennis, and golf, whether played in public or on private

grounds. It hardly seems probable that it could have been the intention of the legislature to enact a provision so drastic in its terms as to make the playing of all games on Sunday misdemeanors, without regard to their character, and with no limitations or reservations with respect to the place where, or the circumstances under which, they might be indulged in.

The doctrine of *ejusdem generis* is applied in all cases where there is doubt as to the intention of the legislature, and, as a rule of statutory construction, is stated to be that where general words follow particular ones in a statute the general words will be limited in their meaning, or restricted to things of like kind and nature with those specified. This rule, however, always yields to the manifest legislative intention. (*The State v. Bancroft*, 22 Kan. 170, 207.) In *The State of Kansas v. Hardin*, 1 Kan. 474, it was applied to a statute which declared that "every person who shall set up or keep any table or gambling device, commonly called A. B. C., faro bank, E. O. roulette, equality, or any kind of gambling-table or gambling device, adapted, devised and designed for the purpose of playing any game of chance, for money or property," etc. (Comp. Laws 1862, ch. 33, § 230.) The question presented was whether a pack of cards was a gambling device within the meaning of that act. It was said in the opinion:

"A 'pack of cards,' though, without doubt, frequently used for the purpose of gambling, is also, and probably much more frequently, used for the purpose of mere *amusement*, like draughts, checkers, chess, billiards, nine-pins and dominoes. It will hardly be claimed, we think, that an indictment, framed under this section, for permitting a gambling device, to wit, a 'checker-board,' or a 'chess-board,' could have been sustained, because those implements, although manifestly in some sense 'adapted' to the forbidden purpose, are not within the meaning of the law, either devised or designed for that purpose. . . . It must, we think, be obvious that it was the intention of the legislature in using the general words, after enumerating

specifically certain of the most notorious and obnoxious of the implements used for the forbidden purpose, to include others of *similar* character, and, like them, designed *solely* for gambling purposes. . . . And if the legislature intends to forbid all gambling and betting upon games of chance, it is plain that more certain, definite and comprehensive language should be made use of to evidence such intent." (Pages 477, 478.)

The statute under which defendant was prosecuted was first adopted into the Kansas laws from the laws of Missouri by the so-called bogus legislature of 1855. It was repealed in 1859, together with all the other laws of 1855. (Gen. Laws Ter. of Kan. 1859, ch. 89, § 1.) It was reënacted in 1868 (Gen. Stat. 1868, ch. 31, § 257), but the language has remained the same and is identical with the statute passed in Missouri in 1835, which is still in force in that state. In *St. Louis Agl. & Mech. Ass'n v. Delano*, 37 Mo. App. 284, this statute was construed. In the opinion, which was written by Judge Seymour D. Thompson, it was said:

"Section 1580 prohibits horse-racing, cock-fighting, or playing cards *or games of any kind* on the first day of the week, commonly called Sunday; but this court is of opinion that this prohibition is against games of chance or other games of an immoral tendency, and that it does not involve a prohibition of athletic games or sports, which are not of an immoral tendency, but which tend to the physical development of the youth, and are rather to be encouraged than discouraged. Penal statutes are to be construed strictly. It is an established principle of construction that where general words follow particular ones, they are to be construed as applicable to the things or persons particularly named. . . . The word 'game' is no doubt susceptible of being used in a sense large enough to embrace any contrivance or institution intended to furnish sport, recreation or amusement. But this is not its usually understood meaning when employed in a statute which constitutes it an indictable offense. In such a case it is usually understood to imply some species of gambling. 2 Whart. Crim. Law, sec. 1465*b*." (Pages 289, 290.)

This case was taken to the supreme court, and the judgment of the court of appeals was affirmed. (*The St. L. Agr'l & Mech. Ass'n v. Delano,* 108 Mo. 217.) The supreme court in discussing the statute used this language:

"But these prohibitions are evidently leveled against sports and games that have a demoralizing tendency, and do not extend to mere athletic sports. Besides, this section is penal, and, therefore, to be strictly construed. *Howell v. Setwart,* 54 Mo. 400; *Fusz v. Spaunhorst,* 67 Mo. 256.

"But, further: In this instance, the words, '*or games of any kind,*' fall under the rule which prescribes that where general words follow particular ones they are to be construed as applicable to things or persons of a like nature. *State v. Bryant,* 90 Mo. 534, 2 S. W. 836, and cases cited; *St. Louis v. Laughlin,* 49 Mo. 559." (Page 221.)

The same question was before the supreme court of that state again in *Ex parte Joseph Neet,* 157 Mo. 527, 57 S. W. 1025, 80 Am. St. Rep. 638, and the same conclusion was reached. In the opinion the court said:

"The doctrine of *ejusdem generis* is as rock-ribbed in the law of this state as any principle ever announced. As applied to penal statutes especially, it is only a humane doctrine, and accentuates the wisdom of the fathers when they objected to being punished for offenses which had not been declared to be offenses by the law. It observes the respective rights of the different coördinate branches of the government, by requiring the legislature to enact laws and the judiciary to enforce but not create the laws—not even by construction. Baseball does not belong to the same class, kind, species or genus as horse-racing, cock-fighting, or card-playing. It is to America what cricket is to England. It is a sport or athletic exercise, and is commonly called a game, but it is not a gambling game nor productive of immorality. In a qualified sense it is affected by chance, but it is primarily and properly a game of science, of physical skill, of trained endurance and of natural adaptability to athletic skill. It is a game of chance only to the same extent that chance or luck may enter into anything man may do. But when

The State v. Prather.

chance or luck is pitted against skill and science it is as fair an illustration of what will result as any test that could be applied." (Page 535.)

One of the reasons suggested for holding that the statute was not intended to include baseball is that when the Missouri statute was adopted in 1835 the game was unknown. The same reason applies with almost as much force to our statute, which was adopted in 1855. Until very recently there has been more or less controversy as to the early history and origin of baseball, some contending that it is only a modified form of the English game of "rounders." In order to settle the dispute a special baseball commission was appointed, consisting of a number of eminent men. Their report was published in 1907, and the commission, after full investigation, unanimously decided that baseball is distinctively an American game; that it originated in Cooperstown, New York, in 1839, and that the first scheme for playing it was the invention of General Abner Doubleday, who afterward graduated from West Point and achieved honorable distinction in the civil war. The rules of the game as first published by the Knickerbocker Club of New York in 1845 differ only in a few minor details from those of the modern game. Baseball was first played by regular clubs in 1845, and while it had begun to attract attention in the "fifties" it did not become a common form of sport or exercise and was not generally played until 1865. The first professional club was organized for playing it in 1868. (Rep. Special Baseball Com., Spalding's Official Baseball Guide for March, 1908; 3 Encycl. Brit., 9th ed., p. 406; 74 Cent. Mag. 307-319.)

Horse-racing and cock-fighting, two of the games or sports specifically mentioned in the statute under consideration, are recognized everywhere as immoral in their tendency, and are generally accompanied by gambling and rowdyism; and the most common form of gambling is by card-playing. The particular words

of the statute create a class or species of games which, in the popular mind, are associated with gambling. Baseball, on the other hand, is looked upon as entirely devoid of this and like objectionable features. It is not in any sense a gambler's game. The youth of the land are encouraged by teachers and parents to become proficient in it, as an athletic sport healthful to mind and body. Its popularity, however, is due largely to the fact that it is spectacular, and brings more enjoyment to those who witness it than to the players themselves. This and its freedom from all immoral tendencies have made it the acknowledged national sport, a game the popular interest in which continues unvarying, leveling all class distinctions. There is no doubt that during the past thirty years it has attracted as spectators more people in the aggregate than all other outdoor sports combined, and at the same time it has aroused in people unable to attend it the most intense interest and enthusiasm. No one would think of placing it in the same category with horse-racing, cock-fighting, and card-playing.

It is within the power of the legislature to make the playing of baseball on Sunday a misdemeanor, but if such be the purpose apt words can readily be employed which will express that intention and leave no room for doubt. It is not the province of the courts to legislate or to decide the question of the propriety or impropriety of legislative action. We can only declare at this time that the statute in question does not prohibit the playing of baseball on the first day of the week, commonly called Sunday.

The judgment is reversed.