No. 35,926

The State of Kansas, *Appellee*, v. S. Newton Bowser, *Appellant*.

(145 P. 2d 135)

Opinion filed January 22, 1944.

*Edward Rooney,* of Topeka, argued the cause, and *William M. Bradshaw* and *Jacob A. Dickinson,* both of Topeka, were on the briefs for the appellant.

*George W. Donaldson,* county attorney, argued the cause, and *A. B. Mitchell,* attorney general, and *William P. Timmerman,* assistant attorney general, were on the briefs for the appellee.

The opinion of the court was delivered by

Hoch, J.: Appellant was prosecuted on two counts growing out of an automobile accident. Under the first count he was charged

with manslaughter in the fourth degree; under the second count with leaving the scene of an accident "without giving his name, address or motor registration number." (G. S. 1941 Supp. 8-518, 8-520.) The state did not contend that the defendant intended to kill or injure anyone, the charge being based solely on "culpable negligence." The trial court instructed the jury that if they did not find the defendant guilty of manslaughter in the fourth degree (G. S. 1935, 21-420) they should consider whether he was guilty under the first count of "negligent homicide"—a crime of lesser degree defined in section 8-529, G. S. 1941 Supp.; that if they did not find the defendant guilty of "negligent homicide" they should consider whether he was guilty under the first count of "reckless driving"—an offense of lesser degree as defined in section 8-531, G. S. 1941 Supp. The jury acquitted on the first count and convicted on the second count. From the judgment and from the sentence of one year in jail on the second count this appeal is taken.

Appellant's principal contentions are that count two did not state facts sufficient to constitute a crime under the statute and that the motion to quash should have been sustained; that the evidence was insufficient to establish a crime under the statute and that the motion to discharge should have been sustained; and that his rights were prejudiced by failure to give requested instructions covering his theory of the case.

This is the third appearance here for this case. The two former appeals (*State v. Bowser,* 154 Kan. 427, 118 P. 2d 1055; id., 155 Kan. 723, 129 P. 2d 268) were by the defendant, prior to trial upon the merits, and did not involve any issues now presented.

The accident occurred on the night of March 6, 1940, not far from Erie, Kan. Appellant was driving from Parsons to his home in Topeka, Kan. There was some conflict in the evidence concerning the weather, the appellant and some other witnesses testifying that it was raining and snowing. All agree that it was dark, the sky being overcast with clouds. Charles H. Moore, who lived a half mile or more from the intersection where the accident occurred, had gone to the mailbox to get his mail and presumably was standing near the box, having parked his car near by. Appellant's car, traveling westward, skidded and either struck Mr. Moore directly or hit the other car which in turn struck him, knocking him unconscious. Immediately after the accident another car, coming from the north, arrived at the intersection. The other car was oc-

cupied by two boys or young men, Harold Williams and Dewey Gearhart, the latter being the driver. The two boys and appellant got out of their cars and Harold Williams identified the injured and unconscious man, who was lying on a pile of chat or gravel, as his grandfather. They lifted him into the boy's car. Appellant testified that he helped, but Gearhart testified that he was not sure whether appellant helped pick up the injured man, but that appellant started to raise the front seat—the car being a two-door sedan —so that Mr. Moore could be put in the back seat, but that he and Williams wanted him put in the front seat. Both boys testified that Bowser told them to take him to the hospital and he would follow, but that after they got into the car Williams said they would take him home, which was about three-quarters of a mile distant and that Bowser probably didn't hear that statement. They then drove to the home but Mr. Moore was dead when they arrived. Appellant testified that he told the young men that he was "Bowser from Topeka" but that they were much excited and "everything was in a rush" and he didn't know whether they heard him. He testified that he did not say he would follow them to the hospital but said that he was going on, meaning to Topeka. The boys testified that they didn't hear Bowser say who he was, and that they didn't ask him his name or address. They admitted that they were excited and said that Bowser was also excited—which was natural enough for all concerned, under the circumstances. What happened at the scene, following the accident, took place within a few minutes.

. Gearhart returned to the scene soon after the accident and gathered up some mail which was scattered on the ground. The appellant had gone. One of the boys had noticed that the Bowser car was a Pontiac and that it bore a county 3 license tag. This information was furnished and peace officers of Coffey county caught up with appellant about fourteen miles north of Burlington and took him back to Burlington. There is some conflict of testimony concerning the conversation between the officers and appellant or as to the interpretation to be given to it. However, the issues here to be determined do not require further review of the evidence.

Appellant's contentions, more specifically stated, are that the second count was insufficient because it failed to advise him in what respect he had violated the statute (§§ 8-518, 8-520); that Mr. Moore being unconscious, there was no one present to whom he was under legal obligation, under the statute, to give his name, address

and car tag number; that he attempted to disclose his identity to Williams and Gearhart; that when the boys drove away with the injured man he was left alone at the scene, on a dark and inclement night, and that he was under no obligation to remain there and no purpose would have been served by doing so; that he was entitled to an instruction interpreting the statute in the light of the circumstances existing, and that under section 8-523, G. S. 1941 Supp., he had twenty-four hours in which to report the accident to the Highway Patrol but was taken into custody soon after the accident and before he had any opportunity to comply.

Before examining appellant's contentions we note certain proceedings which took place after the jury had been given the instructions and had retired to consider its verdict. The jury returned to the jury box and the following transpired:

"Jury Foreman: There is one question we would like to be clear before us, and that is in regard to leaving the scene of the accident. I believe the defense stated he had twenty-four hours in which to report that. Is that correct?

"The Court: You will find it all in the instructions I gave. You will have to be guided by the instructions as to the law I gave you. If you will read those instructions—

"Jury Foreman: The reason we raised that question is, it was given by the defense attorney and it wasn't challenged by the state. It might have been an oversight of his whether he didn't mean to.

"The Court: Beginning with the instruction 13 and following, you will find the instructions relating to the second count of the information. If you wish to deliberate further this evening, I will let you retire, but if you think you should go home and take care of your work, I will excuse you now, as I know all of you are very busy during this war emergency.

"Jury Foreman: I believe we will retire and decide. The Court: You may retire."

We cannot escape the conclusion that this left the jury in the dark about a matter that was disturbing them—the question of whether there is a statute providing for report of an accident to the highway patrol within twenty-four hours, and if so what bearing, if any, it had upon the case. Counsel had referred, during the trial, to the existence of such a statute and the jury was evidently perplexed about it. The court simply said, "You will find it all in the instructions I gave." It is true that the twenty-four hour statute was not involved in the issue to be determined, and accordingly no instruction relating to it had been given. But the court's reply was readily open to the interpretation that there is no such statute. Without overemphasizing the point we think the jury would have been less

confused if they had been told there was such a statute but that it was not involved and should be given no weight in their deliberations.

We go to the main issue. What are the requirements of the statute, and was the information sufficient to charge an offense under it? Section 8-518, G. S. 1941 Supp., provides in part:

"(a) The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible, but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 20 (8-520)."

Section 8-520 therein referred to is as follows:

"The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address, and the registration number of the vehicle he is driving and shall upon request and if available exhibit his operator's or chauffeur's license to the person struck or the driver or occupant of or person attending any vehicle collided with and shall render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person."

Count two was as follows:

"That within the County of Neosho and State of Kansas, and on or about the sixth day of March, 1940, one S. Newton Bowser then and there being did then and there unlawfully and wilfully, being the driver of a motor vehicle involved in an accident, resulting in death, did then and there leave the scene of the accident without giving his name, address or motor registration number, all contrary to the Statutes in such cases made and provided and against the peace and dignity of the State of Kansas."

The information simply recites that the defendant left the scene "without giving his name, address or motor registration number. Does that statement alone completely reflect the provisions of the statute? We think not. To hold that it does would immediately raise a most serious question as to the validity of the statute. Suppose the criminal statute, *supra*, were entirely silent as to the persons to whom the information should be given and had solely provided: "The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address, and the registration number of the vehicle which he is driving." Clearly such a statute and an information or indictment based upon

it would be open to serious attack for uncertainty, for indefiniteness. (*State v. Blaser*, 138 Kan. 447-449, 26 P. 2d 593; *State v. Davidson*, 152 Kan. 460, 105 P. 2d 876; *State v. Ross*, 152 Kan. 495, 105 P. 2d 879.) To whom would the information have to be given? Would it be sufficient for the driver to give it to some guest riding in his own car? Or to some hitch-hiker who happened by, who knew none of the parties and who went on his way unconcerned? Or if no other living person were present would the driver be compelled to wait at the scene indefinitely until some one appeared? Or if alone at the scene would he violate the statute if he left and went to get help? Fortunately we are not confronted with so barren a statute. In substance the pertinent part of the statute provides that the driver shall: (*a*) Give his name, address and car registration number, and (*b*) exhibit his operator's or chauffeur's license—if the same is available and he is requested to do so, *"to the person struck or the driver or occupant of or person attending any vehicle collided with,"* etc.

We think that clearly the portion indicated in italics must be construed to apply both to (*a*) and (*b*). Otherwise the statute would be left wholly silent as to the persons to whom the driver's name, address and car number are to be given and its validity thus made subject to gravest doubt. Moreover, if the words in italics are construed as applicable only to (*b*), the result would be wholly illogical. Such a construction would leave us with a statute having a provision to indicate persons to whom the driver's license must be exhibited—if requested—but having no such provisions as to the far more important information concerning the driver's name, address, and car-tag number.

We must conclude that appellant's construction of the statute was correct, and that he was under no legal obligation to give the information to anyone—before leaving the scene—except "to the person struck or the driver . . . of or person attending any vehicle collided with." No one but the injured man came within the classification and he was unconscious and unable to receive the information. Neither of the two boys who arrived at the scene was the "driver . . . of or attendant upon any vehicle collided with."

It may well be argued that the statute should require that the information be given to anyone who is present or who arrives at the scene of the accident. But ours is not a legislative function.

And this fact applies with added force in the case of criminal statutes. It is elementary that such statutes must be strictly construed in favor of the accused; that if they are defective for lack of certainty the defect is not to be cured by judicial process, and that courts are not even at liberty to extend by intendment statutes creating and defining crimes. (14 Am. Jur. 773, 776.)

We conclude that the second count of the information did not allege facts sufficient in themselves to constitute an offense under the statute and that since the evidence disclosed that no persons were present to whom, under the statute, there was an obligation to give the information referred to in the statute, the motion to discharge should have been sustained as to the second count.

In view of the conclusions above stated, it is not necessary to determine questions relating to the instructions. It seems well to say, however, that those questions have been carefully considered and we would have been impelled to the view that instruction No. 17 was prejudicial to the defendant. Instruction 17 was as follows:

"The defendant among other things contends in this case that he stayed on the scene of the accident until the deceased, who was unconscious, was placed in the car of a relative and driven off, that when the relatives drove away with Mr. Moore, he found himself alone at the scene. In this respect, I instruct you that one of the purposes of the statute is to require a citizen in a collision such as defined by the above statutes to stop and give aid and not leave the wounded alone and helpless."

The above language was taken bodily from an instruction requested by the defendant, but it constituted merely the preliminary part of the requested instruction which dealt, in the main, with appellant's theory of the case. We do not determine whether the instruction as requested correctly stated the law or whether it was error to refuse to give it. But the instruction as given by the court could leave only one impression—an impression that one issue to be considered by the jury was whether the defendant had failed to give aid to the injured man and had left him "alone and helpless." There was no evidence whatever to elicit such an instruction. The state had not contended that the defendant had violated the statute in that regard. All the evidence was wholly to the contrary.

The judgment is reversed with directions to quash the second count of the information and to discharge the defendant.

PARKER, J., not participating.

HARVEY, J., dissents.

SMITH, J. (dissenting): I find myself unable to agree with the opinion of the majority as it refers to paragraphs 3 and 4 of the syllabus. Briefly stating my views, I am not impressed with the argument that to hold that the evidence in this case proved a violation of the statute would be to hold that the statute was so indefinite as to be unconstitutional. None of the hypothetical cases set out in the opinion impress me.

Almost immediately after the old gentleman was struck by defendant's automobile his two grandsons appeared on the scene. I think a fair construction of the statute places the obligation on the defendant, who has injured another while driving an automobile, to give his name and address to any interested party who appears on the scene. Certainly this obligation was as great as though the grandsons had been actually riding in the car with him at the time he was hurt. I agree that a criminal statute should be strictly construed, but it should not be so strictly construed as to defeat the easily ascertained intention of the lawmakers.