No. 37,658

THE STATE OF KANSAS, *Appellant,* v. J. H. NICHOLS, *Appellee.*

(207 P. 2d 469)

Opinion filed June 11, 1949.

*Tudor M. Nellor,* assistant county attorney, argued the cause, and *Harold R. Fatzer,* attorney general, and *Harold H. Harding,* county attorney, were with him on the briefs for the appellant.

*David W. Carson*, of Kansas City, argued the cause, and *David F. Carson*, of Kansas City, was with him on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This is an appeal by the state in a criminal case from an order of the trial court setting aside a plea of guilty to a felony charged fourteen days after the plea was received and sentence imposed. The record in the trial court may be summarized as follows: The appellee, J. H. Nichols, hereinafter referred to as defendant, was represented by Elmer C. Jackson, Jr., an experienced, competent attorney of Kansas City, of his own choice, at the preliminary examination and at all times in the district court. The preliminary examination was held August 6, 1948. Defendant was held for trial in the district court. No complaint is made of that. In due time an information was filed in the district court. This charged that on or about June 23, 1948, in Wyandotte county, and within the jurisdiction of the court, "one J. H. Nichols, with deadly and dangerous weapons, to-wit: A pocket knife and brass knuckles, a more accurate description of which cannot be given, did unlawfully, willfully, feloniously, premeditatedly, on purpose and with malice aforethought make an assault upon one J. H. Foster, with intent, him, the said J. H. Foster, unlawfully, willfully, feloniously, premeditatedly, deliberately, on purpose and with malice aforethought to kill and murder; and with said brass knuckles on the hand of him, the said J. H. Nichols, he, the said J. H. Nichols, did unlawfully, willfully, feloniously, premeditatedly, deliberately, on purpose and with malice aforethought hit at, into and against the body of him, the said J. H. Foster, thereby giving to and inflicting upon the body of said J. H. Foster, severe wounds, with the intent aforesaid contrary to the statute in such case made and provided."

On January 14, 1949, the case was called for arraignment and plea. The information was duly read to defendant and the following proceedings were had:

The Court: "Very well, J. H. Nichols, you have heard the charge filed against you in this case, which alleges that you assaulted the named—J. H. Foster—with felonious intent, with a deadly and dangerous weapon. Now to the charge contained in this amended information, how do you plead? Guilty, or not guilty?"

The defendant: "Guilty."

The Court: "Very well; you understand this plea, do you?"

The defendant: "Yes, sir."

The Court: "And you did make this assault upon this man with brass knuckles and a pocket knife as charged here; you did assault and beat the man?"

The defendant: "Yes, sir."

The Court: "All right; the court will accept the plea. Is there any reason why sentence should not now be passed upon you? Do you have any statement to make to the court, Mr. Nichols?"

The defendant: "No, sir."

The Court: "Does the attorney have anything to say?"

Mr. Jackson: "Not at this time, your Honor."

The Court: "Very well; the court accepts the plea, and no reason being stated why sentence should not now be passed, it is the judgment of this court, J. H. Nichols, that you be and you are hereby ordered to be confined at hard labor in the state penitentiary at Lansing, Kansas, for a term of not less than one, nor more than ten years; and it is further the sentence and judgment of this court that you pay the costs in this case. Do you understand that sentence?"

The defendant: "Yes, sir."

The Court: "All right. Now is there to be an application for a parole in this case?"

Mr. Jackson: "Yes, sir, your Honor."

The Court: "Is this man on bond now?"

Mr. Jackson: "Yes, he is, your Honor."

The Court: "Very well, he may remain at liberty on the present bond until the presentation of his application for a parole to the Parole Board later this afternoon."

Mr. Jackson: "Very well, your Honor."

The parole board, organized under G. S. 1947 Supp. 20-2301 to 20-2306, consisting of Hon. E. L. Fischer, Hon. Russell C. Hardy and Hon. Harvey J. Emerson, met at 2:00 o'clock p. m. January 14. Mr. Nellor, the assistant county attorney, stated that defendant had entered his plea of guilty before Judge Hardy that morning and was sentenced for the crime of felonious assault with a deadly and dangerous weapon with intent to kill; that on the day in question defendant boarded a bus of the Kansas City Public Service Company at Tenth and Minnesota, which bus was operated by Mr. Foster and was headed south on Tenth St. Defendant presented his transfer to the bus operator, who said the transfer was not satisfactory, and an argument ensued between him and defendant. Mr. Foster said to defendant: "You will have to pay a new fare or get off the bus." Defendant cursed the operator, called him a profane name, but he got off the bus at the next stop. The bus operator took the bus to the end of his run and as he approached Tenth and Splitlog, going north on Tenth, with passengers on the bus, defend-

ant boarded it and gave the operator fifty cents and got his change. Then he asked his badge number. The operator told him his badge number and then defendant cursed him again. As the bus started to move north the defendant struck the operator with the brass knuckles and proceeded to beat him with them. The bus continued to move, but went across the street and jammed up against the curb and stopped. Then defendant threatened to kill the bus operator with a drawn knife which he had in his hand, and thereafter got off of the bus and went away, and was later apprehended.

Mr. Jackson stated that "Mr. Nichols is a man of about sixty years of age, and this situation that happened is very regrettable and very unfortunate, and was, in sum and substance, as Mr. Nellor has related it"; that he talked with Mr. Foster, who stated that he could not recommend a parole, but that he would leave the matter entirely to the parole board; that in view of the age of the defendant and the fact that he has a family—a wife and four children— and a number of friends and neighbors who had known him throughout the years to be a man of good reputation, this is a situation wherein once in a man's lifetime he lost his temper and violated the law.

By Judge Fischer: "Was he drunk at the time?"
By Mr. Jackson: "No, he was not, your Honor."

He further stated defendant was a hod carrier, worked hard for a living, and on the particular day he had worked hard and his temper was particularly short; that he had asked defendant if he would get the signatures of some of his neighbors and acquaintances in order that the court might have an idea as to his caliber and reputation, and that the application and recommendation for parole was headed by his pastor, who was present in court; that this was done to give the board an idea of the reputation of defendant and the good name he had borne before this very unfortunate circumstance; that defendant had not particularly paid much attention to church or religious activities, but his pastor had informed the speaker that defendant had in all seriousness been converted and was a very good church member since this unfortunate circumstance.

"I appreciate that in this sort of matters, they are of a serious nature. There is nothing at all that could be twisted about to show that this man has not violated the law."

But because of his age and family, his record as a good citizen, who had never previously been arrested, the speaker thought he was a fit subject for parole.

"There have been absolutely no promises made to this man whatsoever, but from the facts in the case as I have known them to be, and from what my client has advised me, I believe unquestionably that when he made the assault upon Mr. Foster, he did violate the law. . . . that this is a case that the court and the board could justifiably recommend the granting of a parole and that in so doing, justice would be carried out."

Mr. Nellor: "There are some facts that I omitted before, which in substance are that when he boarded the first bus and had the argument with Mr. Foster, he asked for Mr. Foster's badge number. Mr. Foster gave him his badge number, and thereafter, between the time Mr. Foster returned on the return trip, the defendant had boarded three buses and had asked each operator what his badge number was, and when he got this bus that was operated by Mr. Foster, the last time, he asked him his badge number, and as soon as he gave him the same number that he had originally given him, then the assault occurred. It appears to me as though he was wanting to make doubly sure that he didn't make a mistake in getting the original operator of the bus that he had the original argument with. I might add that Mr. Foster is very fortunate in being alive today under the circumstances."

Mr. Jackson: ". . . I appreciate the feelings of the County Attorney, but I wouldn't want the matter to be any blacker than it is. The man has violated the law true—"

Judge Fischer: "Do you deny that statement that he laid for this conductor's car?"

Mr. Jackson: "No, no, your Honor, but I was referring to his comment about the situation that the man is fortunate that he is alive today. I appreciate this man had no right to violate the law in striking Mr. Foster. . . ."

On the same day Judge Hardy appeared in court and the following proceedings were had:

Judge Hardy: "I have been delegated to make the report of the board upon this application.

"The board is unanimous in the opinion that the parole should not be granted. This is not a case, as counsel argues, of a sudden burst of temper at the end of a hard day's work. This is a case of a man who laid in waiting and boarded three buses looking for this particular man, and then makes an assault on him. This assault was so serious that Mr. Foster was confined to a hospital for three weeks. Had he died, it would have been a clear case of premeditated murder; and while we appreciate the fact that this man now has friends who sign a petition to keep him out of the penitentiary, nevertheless we do not think that a man who is guilty of this type of crime, made a premeditated and vicious attack with these instrumentalities upon a man who was presumably performing his duty, over the right to ride on a transfer which involved at most the payment by him of ten cents—"

Judge Emerson: "Twelve cents, Judge."

Judge Hardy: "—or twelve cents, whatever it is under the new rates, is the type of crime for which the defendant should be liberated without any punishment whatever. If these laws are to mean anything, if they are to have any effect; if the business of the community is to be protected, then some

penalty must be imposed upon violators, particularly where their offense is premeditated as undeniably was the case with this defendant. Now that is the feeling of the board, and as I say, it is unanimous, and I concur in it, and the parole is denied.

"The defendant will stand committed to the custody of the sheriff of Wyandotte County, Kansas, for transfer and delivery to the warden of the state penitentiary at Lansing, Kansas, pursuant to the sentence imposed."

Immediately thereafter defendant was placed in the custody of the sheriff to be transported to the state penitentiary at Lansing to serve the sentence entered by the court on January 14. He was not immediately taken to Lansing, but was kept in jail, awaiting transportation there. On January 17 defendant filed a "Motion to set aside a plea of guilty and to vacate judgment," for the reasons:

"1. Counsel for the defendant, since the entering of the pleas of guilty by the defendant, has learned facts on which the defendant may predicate a defense, which if known at the time of advising this defendant would have caused him not to enter a plea of guilty.

"2. Based upon the evidence above, the law governing the case is materially changed, and there is considerable doubt as a matter of law of the sufficiency of the pleadings as it applies to the charge brought against the defendant."

This motion was called for hearing before the court on January 22, at which time Mr. Jackson, among other things, said:

"Now it is true on a motion for a new trial, newly discovered evidence must be set out in an affidavit. It is our contention that it is not necessary to set it up on a motion to set aside a plea because in this instance we are not asking for a new trial. The defendant is merely asking for his right to trial by jury. It is purely a matter of discretion with the court."

There was further argument, including that by counsel for the state. The court, among other things, stated:

"I have serious doubts in my mind as to whether after this plea is entered, sentence pronounced and the man is delivered to the custody of the Sheriff for transfer to the State Penitentiary, whether the Court has any jurisdiction."

There was further discussion and the court continued the hearing to January 28 and made the following order:

"It is further ordered that the proceedings and the execution of the judgment or order is stayed pending such hearing, and the man will be retained in the custody of the Sheriff of Wyandotte County, Kansas, and not transferred to the penitentiary until these matters can be determined."

At the hearing on January 28 defendant presented the affidavit of one Laverta Angelo, who stated that he was a resident of Kansas City and was a passenger on the bus on June 23, 1948, at the time of the alleged assault, the pertinent part of which affidavit reads:

"Affiant states that he was seated about four seats from the front of the bus when J. H. Nichols, this defendant, got on the bus and paid his fare; that the driver of the bus, J. H. Foster, said something to Nichols, and Nichols said something in reply to him, none of which this affiant understood; that the driver was driving the bus very slowly and was sitting slightly sideways and turned partially toward the defendant, Nichols; that the driver had an angry expression and a scowl on his face at the time he was saying something to the said J. H. Nichols; that the driver of the bus, in a violent motion, reached toward a place underneath the dashboard of the bus and grasped an object which this affiant could not identify, and immediately after that J. H. Nichols and the driver of the bus started fighting one another. This affiant further states that J. H. Nichols at no time had a knife in his hand from the time he boarded the bus until he got off the bus."

After further discussion the court found:

"The Court, being fully advised in the premises, finds that he does have jurisdiction of the person of the defendant. The Court further finds that the defendant has been incarcerated in the Wyandotte county jail in custody of the Sheriff under sentence of the Court on the 14th day of January, 1949, to be forthwith transported to the State Penitentiary at Lansing, Kansas, and has remained in custody of the Sheriff under such sentence of said Court to and including the date of the hearing on defendant's motion, the 28th day of January, 1949.

"The Court further finds that the motion of the defendant to withdraw his plea of guilty is within the sound discretion of the Court, and, after due and careful deliberation and consideration of the affidavit of Laverta Angelo, argument of counsel, authorities cited, said motion should be granted.

"IT IS THEREFOR BY THE COURT ORDERED that the sentence and judgment of the Court made and entered on the 14th day of January, 1949, be and the same is this day set aside and held for naught, and the defendant be and he is hereby given permission to withdraw his plea of guilty."

Counsel for the state objected to the ruling of the court and reserved the question for appeal to this court, and the court specifically ordered that all the questions objected to are reserved by the state, and bond was fixed for the defendant's appearance. Notice of appeal was promptly given.

We turn now to the legal questions argued. Counsel for appellant contend that under the facts shown by the record the court had no legal authority to entertain defendant's motion to withdraw his plea of guilty at the time it was filed, to make an order suspending the execution of the sentence, or to grant the motion and set aside the plea of guilty and the sentence imposed thereon. It may be conceded there is no statutory authority for the court's action. The pertinent part of our statute specifically involved may be quoted or summarized as follows:

G. S. 1947 Supp. 62-1722: "In any criminal action in which defendant pleads guilty . . . if defendant is not then in custody of the sheriff, he shall be taken into custody at once; and unless he announces that he desires to file a motion for a new trial, he shall be sentenced either on that date or at a fixed time within ten days."

The defendant pleaded guilty on January 14. No announcement was made by him or his counsel that he desired to file a motion for a new trial. Under G. S. 1935, 62-1604, such a motion must be made before judgment. The court inquired whether there was any reason why sentence should not be imposed at that time, and both the defendant and his attorney answered in the negative. The sentence was imposed and defendant, who had been at liberty on bond, was taken into custody by the sheriff. No complaint is now made of any of those proceedings.

"When judgment is rendered, or sentence of imprisonment is imposed, upon a plea or verdict of guilty, a record thereof shall be made upon the journal of the court, which record among other things shall contain a statement of the offense charged, and under what statute; the plea or verdict and the judgment rendered or sentence imposed, and under what statute, and a statement that the defendant was duly represented by counsel, naming such counsel, or a statement that the defendant has stated in writing that he did not want counsel to represent him. . . ." (G. S. 1947 Supp. 62-1516.)

It appears that this particular record was not made. We are told the trial court did make a record in substantial conformance to this statute in his trial docket; that the formal entry to be made upon the clerk's docket was prepared by the county attorney, but that defendant's counsel delayed noting his approval or disapproval thereof. The statute has a laudable purpose. The court and the court officials who had any duty in connection therewith, including the attorneys, should have seen to it that it was complied with promptly. The fact that was not done, however, does not render unlawful the sheriff's custody of defendant. (*In re Christensen,* 166 Kan. 671, 674, 203 P. 2d 258.) Normally, after sentence is imposed, the district court has nothing further to do with respect to the defendant. It is the duty of the sheriff to carry out the order of the court and transfer defendant to the state penitentiary. In this case, no doubt the sheriff was awaiting the copy of the journal of the court required by the section last mentioned. It is well settled by our decisions (*Parks v. Amrine,* 154 Kan. 168, 117 P. 2d 586; *State v. Carte,* 157 Kan. 139, 138 P. 2d 429; *Layman v. Hudspeth,* 162 Kan. 445, 176 P. 2d 527) that defendant commenced the

serving of his sentence on January 14, the day he was sentenced and taken into the custody of the sheriff. Comments of the trial court indicate that it regarded as controlling the dissenting opinion in *State v. Carte,* supra. Even if so, it would hardly sustain his ruling. Aside from that a dissenting opinion is not regarded as the judgment of the court.

Appellant argues that the court had no authority on January 22 to make an order staying the judgment and sentence rendered on January 14 and directing defendant to be retained in the custody of the sheriff and not transferred to the penitentiary. This point is well taken. The only authority given by statute to any court to stay the execution of a sentence in such case is that given by G. S. 1947 Supp. 62-1724 (b), which in substance provides that if defendant makes the appropriate application the supreme court, or some justice thereof, shall order the execution of the sentence stayed.

It follows from what has been said that what was done in the district court after sentence was imposed is not authorized by any statute of this state. This does not necessarily mean that the trial court had no jurisdiction to entertain and pass upon the motion filed by defendant on January 17 asking permission to withdraw his plea of guilty. The matter is governed by general rules of law applicable to the situation as distinct from being governed by statute. The subject is treated in 22 C. J. S. 637, § 421; 16 C. J. 396, §§ 728-730; 14 Am. Jur. 960, §§ 286-288. These authorities make it clear that permission to withdraw a plea of guilty is within the sound discretion of the court and not a matter of right. An application for permission to withdraw a plea is addressed to the sound discretion of the court, and this discretion is a judicial one and must not be abused.

Many cases are cited in support of the text above mentioned; also in the annotations in 20 A. L. R. 1445; 66 A. L. R. 628, and the A. L. R. Supplemental Decisions. Cases on the point are also digested in the American Digest System, Criminal Law, Key Number 274. Searching our own cases we find the following dealing with the question:

In *City of Salina v. Cooper,* 45 Kan. 12, 25 Pac. 233, defendant was arrested for selling liquor in violation of a city ordinance. When called upon to plead he admitted that he had sold beer in original packages. The police judge entered a plea of guilty and adjudged defendant to pay a fine and costs. In a few minutes after the entry of such judgment defendant asked leave of court to with-

draw the plea, and presented an affidavit that he was much excited, there was a large crowd in the court room, he had no counsel and was not asked if he wanted one nor given an opportunity to employ counsel; that in fact he was not guilty of selling liquor in violation of the ordinance and had never admitted such violation, and asked leave to withdraw the plea of guilty. That was refused and on appeal the application was renewed and denied. This court reversed.

In *State v. Calhoun,* 50 Kan. 523, 32 Pac. 38, the proceeding was upon a petition for a writ of error *coram nobis.* Calhoun had entered a plea of guilty in 1885 and was sentenced to the penitentiary. In 1892 he filed his petition in the same case alleging that he was not guilty of the offense, but that he was forced by threats, duress and the fear of mob violence to enter a plea of guilty. The jury found in his favor. This court affirmed, holding that he was entitled to have the plea of guilty set aside and placed back in the same condition as he was before he entered the plea of guilty.

In *State v. Yates,* 52 Kan. 566, 35 Pac. 209, it was held:

"The rule is, that where a defendant has pleaded guilty in a criminal cause, and sentence has been passed upon him, it is within the sound discretion of the trial court to permit the plea to be withdrawn, and to allow a plea of not guilty entered. If the court abuses its discretion, error may be assigned therefor." (Syl. ¶ 1.)

Defendant, an intelligent person who owned a drugstore, was charged with violating the prohibitory liquor law, which fixed the punishment as a fine of not less than $100 nor more than $500, or imprisonment in the county jail not less than thirty days nor more than six months. He was represented by able counsel, pleaded guilty and was sentenced to pay a fine of $300 and costs. The next day he presented a motion to withdraw his plea of guilty upon the ground that the prosecuting attorney had led him to believe that his fine would be only $100. Upon the hearing of the motion it was shown the county attorney had made no promise of that kind, and in fact had not urged him to plead guilty. Some of defendant's friends who talked with the county attorney advised defendant that if he pleaded guilty he would be fined only $100. The trial court refused to set aside the plea of guilty and this court affirmed. The case was followed in two cases, *State v. Pyle* and *State v. Pottenger,* 52 Kan. 569, 35 Pac. 210, and a similar ruling made.

In *State v. Garrett,* 78 Kan. 882, 98 Pac. 219, defendant was prosecuted under section 2, chapter 77, Laws of 1899, which made

it a misdemeanor for one to set up and keep a place commonly known as a "Bucket Shop" or "Board of Trade" (the statute, since amended, which made it a felony, is G. S. 1935, 50-122). He was arrested November 15, 1907, and appeared in court with an able attorney and had the case continued until the next term of court, February, 1908. On the first day of that term he appeared in court with his attorney and entered a plea of guilty, and at his request sentence was postponed until later in the term. On the day sentence was to be imposed he appeared with able lawyers other than the one who had previously represented him, and moved to be permitted to withdraw his plea of guilty and enter his plea of not guilty. This was denied. He filed a motion in arrest of judgment, which was denied, and he appealed. (These facts are taken from the briefs, since they are not set out in the opinion.) This court affirmed in a *per curiam* opinion, in which it was said:

"It has been announced so often that if a defendant in a criminal case enter a plea of guilty it is within the discretion of the court whether it will allow the plea to be withdrawn and a plea of not guilty to be entered that the proposition does not need reiteration. Here the defendant was represented by able counsel of well-known standing at the bar from the commencement of the proceeding. Several months elapsed before arraignment. No inducement was offered or pressure brought to bear upon him from any source respecting his pleading guilty. He does not claim to be deficient in understanding or that his attorneys misled him in any particular. The claimed misapprehension in his own mind of the consequence of his plea is not entitled to nearly as much consideration as the one held inconsequential in the case of *The State v. Yates,* 52 Kan. 566, 35 Pac. 209. The voluntary plea of guilty solemnly entered by the defendant while he was duly attended by his counsel was the highest evidence of guilt, and the court did well to weigh with caution the defendant's affidavit, filed after the jury had been discharged for the term, stating that he had looked further into the evidence for and against him and had found that it ought to be submitted to a jury, and that he was innocent. Very clearly the district court did not abuse its discretion in refusing to allow the plea of guilty to be withdrawn." (p. 883.)

In *State v. Oberst,* 127 Kan. 412, 273 Pac. 490, it was held:

"It was material error to permit a seventeen-year-old boy, without an attorney to consult with and advise him, to plead guilty to seven charges of murder in the first degree and to impose seven life sentences of penal servitude against him thereon; and it was material error to refuse to set aside such sentences and judgment and to permit him to withdraw his plea of guilty when counsel for the youth, belatedly employed, presented a motion to that effect in his behalf." (syl. ¶ 1.)

In *State v. Wassinger,* 131 Kan. 316, 291 Pac. 743, several persons were arrested, charged in one complaint, with stealing cattle. A pre-

liminary examination was held September 6, 1929, and Bieker testified at that hearing. On September 16 he entered a plea of guilty, but no information had been filed against him and none was filed until September 20. He had no attorney when he entered his plea. On September 17 Bieker filed his motion for leave to withdraw the plea upon the grounds that he was not represented by counsel, did not fully understand the consequences of his act, that the plea was entered through fear; that in truth and in fact he was not guilty of the offense charged, and that the plea was made through coercion and influence of the county attorney. The court refused to permit him to withdraw the plea and upon an appeal this court reversed.

In *State v. Beasley*, 133 Kan. 438, 300 Pac. 1103, A. J. Beasley and Fred Chesnutt conceived a plan to make money by stealing zinc ore from their employer, a mining company, and hired one Campbell to haul the ore away and sell it, which he did. Eventually Campbell began to do some thieving on his own part, for which he was arrested. Beasley and Chesnutt were arrested and bound over for trial on two counts. While Campbell's case was being tried separately Beasley and Chesnutt made an agreement with the county attorney that if he would dismiss one of the counts against them they would plead guilty to the other. That was done. Later Beasley and Chesnutt got a statement from the county attorney, who was no longer acting as such, reciting that he did not have evidence sufficient to convict on the count to which they had pleaded guilty. Upon the strength of that statement they applied to the court for permission to withdraw their plea of guilty. This was denied and defendants were sentenced to the penitentiary on their plea of guilty. Upon their appeal to this court they contended the court erred in not permitting them to withdraw their plea. This court held "that defendants' applications for permission to withdraw their respective pleas of guilty were properly denied."

In *State v. Finney*, 139 Kan. 578, 32 P. 2d 517, defendant was charged with forgery of certain bonds in thirty-one counts. He was represented by able counsel. At the conclusion of the state's case at the trial there were conferences between counsel for defendant and the state with the court, in which counsel for defendant offered to have him plead guilty to certain of the counts and as to others dismissed, which was not acceptable, and finally to plead guilty to all of them if the sentences would run consecutively upon fifteen counts and concurrently upon the others. Something of this nature appears

tentatively to have been agreed upon and the jury was discharged, with assurances that defendant would enter pleas of guilty. The matter of sentence was postponed several days. In the meantime a question arose as to whether the court had authority to make any of the sentences on any number of the counts to run concurrently with the others and expressed the view they should all run consecutively. At that point counsel for defendant asked leave to withdraw the plea of guilty. This was considered and denied. Sentences were imposed on the defendant upon each of the counts, the sentences to run consecutively. On defendant's appeal it was held the court did not err in overruling defendant's motion to withdraw his plea of guilty.

In *State v. Bowser*, 155 Kan. 723, 129 P. 2d 268, defendant had been charged with manslaughter and entered a plea of guilty, upon which the court imposed a jail sentence. This was done on the mistaken advice of counsel that such a sentence would cause the case to be regarded as a misdemeanor as distinct from a felony, the court being of the same view. An appeal was taken from the judgment. Later appellant filed a motion asking permission to withdraw the plea vacating the sentence and entered a plea of not guilty. This was a serious mistake to defendant by reason of the fact that he was a licensed undertaker and the conviction of a felony is a statutory ground for revocation of his license. It was made clear defendant would not have entered the plea of guilty had he known the offense was regarded in law as a felony irrespective of the punishment imposed. The trial court denied his motion. This court reversed and directed a new trial. See *State v. Bowser*, 158 Kan. 12, 145 P. 2d 135, for result of second trial.

A defendant's plea of guilty in a criminal case is a confession of guilt of the crime charged and of every fact alleged in the charge. Legally speaking, it is the most formal and binding confession it is possible for him to make. If later the plea is set aside and there is a trial the plea may be offered in evidence against him. When the accused is represented by capable counsel and the plea is freely, fairly and intelligently made, and its consequences understood, it should not be set aside. When some or all of these facts are lacking, common justice may authorize or require the setting aside of the plea. The appropriate method of seeking to have that done is for defendant to file a motion in the same court and in the same case in which the plea was entered. The motion should set up the facts in

issuable form showing or tending to show grounds upon which the plea should be set aside. Ordinarily it is required to allege that the defendant is not guilty of the crime charged. The time of the filing of the motion, whether before or after the sentence, is not controlling. Neither is the fact that defendant has appealed his case, or is serving the sentence imposed, controlling, but it should be filed with reasonable promptness, as soon as defendant or his counsel learns facts which would justify the court in setting aside the plea. It is possible, of course, that defendant may file such a motion when no such grounds exist. When the motion is filed alleging facts which would justify the court granting it, if established by competent evidence, a hearing before the court should be had thereon, at which hearing evidence may be offered in favor of or opposed to the motion. The court has jurisdiction to hear and rule upon the motion. It is not a motion for a new trial, though if granted the result is to give defendant another opportunity to have a trial, if he wants it. The motion is addressed to the sound judicial discretion of the court. This discretion should never be abused.

Counsel for appellant contend that upon the record presented the court abused its discretion in granting the motion to set aside the plea of guilty and the sentence based thereon. This point is well taken.

The motion to set aside the plea and sentence states no facts that would justify the court in sustaining it. It does not allege that defendant is not guilty. There is no allegation that defendant was not represented throughout by competent counsel; that he was misled, tricked, coerced, mistreated, or any unfair advantage taken of him by anyone, or that his plea of guilty was not freely, fairly and understandingly made. Upon the hearing of the motion no evidence was offered in support of any of those matters, neither was any contention made that any of those facts existed.

The only thing alleged was that since the plea defendant's counsel had "learned facts on which the defendant may predicate a defense," in view of which "the law governing the case is materially changed," and there is doubt about the sufficiency of the pleading. No issuable fact was alleged with respect to any of those things. The court would have been justified in denying the motion without a hearing.

It was not a motion for a new trial—a fact which defendant's counsel recognize. In appellee's brief it is argued that it could be

so considered under G. S. 1935, 60-3005 (perhaps intending to contend this is so because of G. S. 1935, 62-1414). This argument overlooks the fact that in *State v. Appleton* [1906], 73 Kan. 160, 84 Pac. 753, it was held that our statute (now G. S. 1935, 60-3005) is not applicable to set aside a conviction in a criminal case. This decision has never been reversed or modified.

Upon the second hearing of the motion defendant presented the affidavit of Laverta Angelo, the pertinent portions of which were hereinbefore quoted. Most of this is so indefinite as not to constitute a basis for any material ruling. The one factual statement in it is, "that J. H. Nichols at no time had a knife in his hand." This is in direct conflict with the statement of the defendant at the time of his arraignment, when he answered "Yes, sir" to the question, "And you did make this assault upon this man with brass knuckles and a pocket knife as charged here; you did assault and beat the man?" No force should have been given to this part of the affidavit, and certainly it did not constitute a ground for setting aside the plea. More than that, defendant knew, not only at the time of the assault but at the time of his preliminary examination in August and at the tme he entered a plea of guilty on January 14, what the facts were with reference to that matter. There was no contention by defendant or his counsel at any time that he acted in self-defense. The only additional thing which appears to have been shown upon the hearing of the motion was that members of his family, his personal friends and his minister were sorry for him and hated to see him punished. That constituted no grounds for allowing the motion or setting aside the plea. The result is there was no sufficient ground either alleged or shown that justified the court in making an order setting aside the plea and sentence. From this it necessarily follows that the court abused its discretion in doing so.

The judgment of the trial court should be set aside with directions to reinstate the plea and sentence of January 14, 1949, and to order that the defendant be taken into the custody of the sheriff, to be delivered to the warden at the state penitentiary to serve the sentence imposed, and that a proper entry thereof should be promptly made in the journal of the court and a copy delivered to the sheriff. It is so ordered.