No. 38,673

The State of Kansas, *Appellant*, v. Cora Rinehart Allison, *Appellee.*

(244 P. 2d 176)

Opinion filed May 10, 1952.

*Harold R. Fatzer*, attorney general, *Willis H. McQueary*, assistant attorney general, *Kent E. Yount*, county attorney and *Wilbur D. Geeding*, deputy county attorney, were on the briefs for the appellant.

*Fayette Rowe*, of Columbus, was on the briefs for the appellee.

The opinion of the court was delivered by

Thiele, J.: The state appeals from a judgment of the district court quashing an information.

For present purposes it is sufficient to state that on December 10, 1951, an amended information was filed charging that

". . . on or about the 15th day of December, 1949, and from then continuously until and including the 1st day of August, 1950, Cora Rinehart Allison, then and there being a social welfare client and a recipient of social welfare assistance funds, did, then and there unlawfully, willfully and fraudulently obtain and receive social welfare assistance in the total and aggregate amount of $252.70, by means of a fraudulent device, to-wit: by willfully, unlawfully and fraudulently failing to report to the Welfare authorities the fact that she, the said Cora Rinehart Allison, was receiving income from gainful employment, to which social welfare assistance in said amount of $252.70, she, the said Cora Rinehart Allison, was wrongfully, unlawfully and fraudulently not entitled; and the said Cora Rinehart Allison did willfully, unlawfully, wrongfully and fraudu-

lently, from the 1st day of June, 1949, until and including the 1st day of August, 1950, receive and obtain social welfare assistance funds in the total and aggregate sum of $441.70, to which she was not entitled as aforesaid; and all this she, the said Cora Rinehart Allison, did."

The defendant Allison responded by filing a motion to quash on the sole ground that the information failed to charge her with a public offense.

There is no controversy but that the prosecution is based upon an alleged violation of the social welfare act, originally enacted as Laws of 1937, chapter 327, and now appearing as G. S. 1949, 39-701 to 39-721. Extensive review of the act is not necessary. It provided for a state board to co-operate with the federal government in a program for furnishing public assistance to the needy aged, the needy blind, dependent children, and other social welfare assistance, to determine general policies, and to make rules and regulations therefor; to supervise all social welfare activities of the county boards of social welfare, the rules and regulations of the state board being binding upon the county boards (39-708). Under the statute welfare assistance funds are to be expended to any needy person who has not sufficient income or resources to provide a reasonable subsistence compatible with decency and health (39-709). Provision was also made for county welfare boards to carry out the duties imposed and to adopt rules and regulations not inconsistent with state laws and the rules and regulations of the state board (39-711). Under the statute an "intake office" is defined to be one where the county shall maintain an office for receiving applications, and each county board shall maintain at least one "intake office" (39-702 and 39-713h). A person desiring public assistance under the act shall make application at the intake office, and his application "shall contain a statement of the amount of property, both personal and real, in which the applicant has an interest and of all income which he may have at the time of the filing of the application and such other information as may be required by the state board" (39-713h).

The rules and regulations promulgated by the state welfare board are voluminous and are referred to here to show manner of operation under the statute. References hereafter made are to rules and regulations numbers. After providing as to who may file applications for assistance, it is provided that the application shall contain a statement by the applicant of the amount of the real and personal property which the applicant owns or in which he has an

interest and of all income which he has at the time of the filing of the application (30-3-4). Extended provisions are made for determining the basis for need, and that income and resources shall be considered in determining need (30-5-9), and for budgeting applicant's needs, including income from potential wages (30-5-34c). On the showing thus made an application is approved or rejected, a change to be made when an investigation reveals a change in the extent of need (30-6-1, a, b, d). Provisions for manner of payment may be ignored here. It is further provided that the county agency shall make periodic review of eligibility of all recipients for assistance at intervals no less frequent than each six months and that a review shall be made whenever it is known to the agency that a recipient's living arrangements or other circumstances have changed (30-6-8).

The instant action arises under G. S. 1949, 39-720, which reads:

"Any person who obtains or attempts to obtain, or aids or abets any other person to obtain, by means of a willfully false statement or representation, or by impersonation, collusion, or other fraudulent device, assistance to which the applicant or client is not entitled, is guilty of a misdemeanor, and upon the conviction thereof shall be fined not more than five hundred dollars or be imprisoned for not more than six months or by both such fine and imprisonment; and he shall be required to remit to the county board or private agency the amount of any assistance given him under such fraudulent act. In assessing the penalty, the court shall take into consideration the amount of money or value of property fraudulently received."

We note that the above section was amended by Laws 1951, chapter 288, section 5. Such changes as were made in the statute are of no present importance nor need they be considered in any event as the offense charged was committed prior to the amendment.

Appellee's argument in support of the trial court's ruling is two-fold. She first contends that nowhere in the act is there any denunciation of any offense based on the failure of the recipient of welfare assistance to report income earned while receiving such assistance. She points out that the statute does denounce obtaining assistance "by means of willfully false statement or representation, or by impersonation, (or) collusion" and that she was not so charged; that she was charged only with obtaining assistance by "other fraudulent device"; that G. S. 1949, 62-1005 requires an information must be direct and certain as it regards the offense charged, and the instant information does not do so. She also contends that the doctrine of *ejusdem generis* applies and that the

language of the act having set forth willfully false statements or representations, impersonation or collusion, the other fraudulent devices are limited to the types enumerated. In support she relies on *The State v. Prather,* 79 Kan. 513, 100 Pac. 57, where it was said:

"The doctrine of *ejusdem generis* is applied in all cases where there is doubt as to the intention of the legislature, and, as a rule of statutory construction, is stated to be that where general words follow particular ones in a statute the general words will be limited in their meaning, or restricted to things of like kind and nature with those specified." (l. c. 516.)

and where it was held that the statute now appearing as G. S. 1949, 21-954, did not include or prohibit the playing of a baseball game on Sunday.

In the appellant's brief considerable space is devoted to the proposition that an information in the language of the statute is sufficient. There is no need that we here review various provisions of the code of criminal procedure and of our decisions thereon. A considerable review may be found in *State v. Hazen,* 160 Kan. 733, 737, 165 P. 2d 234, and we adhere to what is said there. The information before us not only follows the statute substantially, but further alleges facts constituting the fraudulent device charged. The real question is whether what is alleged charges the defendant with a public offense.

It is clear under the statute that relief is to be granted only to a needy person who has not sufficient income or resources to provide a reasonable subsistence compatible with decency and health, and it is also clear that before such relief is granted the applicant therefor must establish his right thereto. It is also clear that once a right to relief is established, and payments are commenced that the right does not continue indefinitely, but only so long as the applicant's need is not alleviated. In our opinion the wrongful obtaining of assistance is not limited to willfully false statements or representations, or impersonation, collusion or other act committed when the application is first made, but covers such acts subsequent to the application and the obtaining of welfare assistance thereafter when the need therefor, as disclosed originally, has been alleviated by reason of the fact that the person on relief has received income or other resources so that it may no longer be said he is a needy person within the purview of the statute. The acceptance from month to month of payments for assistance after the situation of the recipient has changed so that he is no longer entitled, with-

out disclosure by him to the proper authorities that he is no longer entitled, is the obtaining of assistance by "other fraudulent device."

In our opinion the doctrine of *ejusdem generis* contended for by the defendant has no application here. That doctrine has application where there is doubt as to the intention of the legislature. We have no doubt that the legislature, in using the phrase "or other fraudulent device" following the other phrases "by means of a willfully false statement or representation, or by impersonation, collusion" meant something more than the later quoted words, otherwise the first phrase was mere surplusage.

In our opinion the trial court erred in sustaining the defendant's motion to quash the information against her. Its ruling and judgment is reversed and the cause is remanded with instructions to overrule the motion.

SMITH, J. (dissenting): I dissent. The prevailing opinion overlooks the rule that criminal statutes should be interpreted strictly. See *State v. Bowser*, 158 Kan. 12, 145 P. 2d 135, where we held:

"Courts are not at liberty to extend by intendment the provisions of statutes creating and defining crimes."

See, also, *State v. Waite*, 156 Kan. 143, 131 P. 2d 708, where we held:

"A rule of strict construction is to be applied to criminal statutes, and courts should not extend them to embrace acts or conduct not clearly included within the prohibitions of the statute."

The list could be extended indefinitely but no rule is much better known. The so-called state welfare statutes, chapter 327 of the Laws of 1937, now G. S. 1949, 39-701 to 39-721, has some twenty-one sections. Besides that, pursuant to the rule-making power conferred on the state board by the statute, there are voluminous rules of the state board. It is significant that nowhere either in the statute or in these rules is there a provision requiring the recipient of aid from the social welfare board to disclose when his condition has changed with reference to income. As a matter of fact, just the opposite is implied by the provision, as noted in the prevailing opinion for the county agency making periodical reviews of the eligibility of a recipient of assistance at no less intervals than six months and that a review shall be made whenever it is known to the agency that circumstances have changed.

If the legislature or the rule-making power had intended that a failure to disclose any change should be a crime, the legislature

would have inserted it in the statute or the rule-making power would have inserted it in one of their rules. Placing the most drastic construction upon the words of section 8a, the provision is that the general eligibility shall depend upon the income not being sufficient income to provide a reasonable subsistence compatible with decency and health. There actually is no provision in the statute anywhere providing the question of eligibility shall depend upon a certain fixed income. The prevailing opinion seems to hold that a failure to disclose an increased income is actually a fraudulent device under G. S. 1949, 39-720. As a matter of fact, there could very well be a difference of opinion as to whether the means the client had at the time he complied with section 8a and was put on the relief rolls and what he later earned in addition was more than enough to provide him with a subsistence compatible with decency and health. To brand such a difference of opinion as a criminal fraud is to my mind to overlook the rule quoted earlier in this dissenting opinion as to the strict construction to be given criminal statutes.