No. 43,997

Ray R. Tipton, *Appellant,* v. State of Kansas, *Appellee.*

(402 P. 2d 310)

Opinion filed May 15, 1965.

*Wilson E. Speer,* of Olathe, argued the cause and was on the briefs for the appellant.

*Hugh H. Kreamer,* County Attorney, argued the cause, and *Robert C. Londerholm,* Attorney General, was with him on the briefs for appellee.

The opinion of the court was delivered by

PARKER, C. J.: This is an appeal from an order of the district court of Johnson County, Kansas, denying appellant's motion under K. S. A. 60-1507 to vacate, set aside or correct a prior judgment and sentence of that court in a criminal action.

During the course of the proceeding appellant was given a full and complete hearing. He was present in person and represented by court-appointed counsel at all times and was given an opportunity to bring in all witnesses he desired to testify in his behalf. In fact the record discloses the testimony of the witnesses consists of one hundred ninety-three pages.

At the close of the hearing the trial court made extensive and comprehensive findings of fact and conclusions of law which, except for some differences between the parties as to the sufficiency

of the evidence sustaining them, disclose the informative facts required to give readers of this opinion a full and complete understanding of the factual picture and issues on which contentions made by the parties in this case must stand or fall. Therefore we quote at length from the journal entry.

"FINDINGS OF FACT"

"1. In January, 1955, a preliminary hearing was held in the Magistrate Court of Johnson County, Kansas, on a complaint and warrant charging the defendant, Ray R. Tipton, and a co-defendant, Mary Callahan, with the crime of murder in the first degree. The Magistrate Judge appointed Lyndus A. Henry, a duly licensed and regularly practicing attorney in Johnson County, Kansas, to represent the defendant Tipton at the preliminary hearing. Mr. Henry was present and participated in said hearing. The defendant Tipton, along with the co-defendant Mary Callahan, was bound over for trial to the District Court of Johnson County, Kansas.

"2. An information was filed by James H. Bradley, County Attorney, charging the defendant Tipton and Mary Callahan with the crime of murder in the first degree. At the arraignment in the District Court Mr. Henry was reappointed to represent the defendant Tipton. Tipton entered a plea of not guilty.

"3. Henry held frequent conversations with Tipton after the preliminary hearing. Henry advised Tipton that the County Attorney and Sheriff had developed a substantial case against him; that under the State's evidence he alone could be convicted for the crime; and possibly the death penalty would be warranted. Henry advised Tipton of the possible penalties for conviction of the crime of murder in the first degree.

"4. Henry advised Tipton that if he had a good defense, he should tell his full story, plead guilty and throw himself on the mercy of the Court.

"5. Several days after the conversation related in Finding No. 4, Tipton told Henry he wanted to tell the truth and proceeded to tell his story to Henry. Henry advised Tipton that the facts as related, in his opinion, made him guilty as an accessory before the fact.

"6. After a discussion between Henry and Tipton and at Tipton's request, Henry told him that he would see Bradley and ascertain if the State would consider a lesser plea if he (Tipton) told the truth like he had to Henry.

"7. After some conversation between Bradley and Henry in which Bradley said he was going to try Tipton for first degree murder before Mrs. Callahan and ask for the death penalty, Bradley said if Tipton would cooperate with the State, tell the truth and testify against Mrs. Callahan, he would try Mrs. Callahan's case first and not ask for the death penalty for Tipton. Bradley further stated that after Tipton had served some time, and in the event he applied for executive clemency, that Bradley would be willing to write a letter on Tipton's behalf regarding Tipton's participation and cooperation in the trial of Mrs. Callahan.

"8. Henry then conveyed to Tipton the contents of his conversation with Bradley as related in Finding No. 7 above.

"9. Tipton told Henry he was willing to tell his story and testify against

Mrs. Callahan at her trial. He also told Henry he was willing to throw himself on the mercy of the Court and enter a plea of guilty. This information was conveyed to Bradley by Henry.

"10. Tipton testified as a State's witness in the first trial of Mrs. Callahan held March 28 through April 6, 1955. Mrs. Callahan was convicted of the crime of murder in the first degree. At the trial, Tipton, in his cross-examination by Mrs. Callahan's attorney, testified that he had been promised nothing for testifying against Mrs. Callahan and that he had no hopes of obtaining leniency for so testifying.

"11. Tipton's case was called for trial on April 11, 1955, and at that time he asked leave to withdraw his plea of not guilty and enter a plea of guilty to the charge of murder in the first degree. Before accepting his plea of guilty, the Court heard evidence for the purpose of determining punishment, which evidence included Tipton's own testimony. He testified that he had told the truth regarding his participation in the crime, had done so freely and without hope of reward or fear of punishment. Bradley recommended to the Court that the death penalty not be imposed. Tipton's plea of guilty was accepted by the Court and he was sentenced to life imprisonment.

"12. At the second trial of Mrs. Callahan, held September 10 through September 19, 1956, Tipton again testified as a State's witness. In response to questioning on cross examintaion by Mrs. Callahan's attorney, Tipton said no promises had been made and no consideration was given him for turning State's evidence, and that there were no 'deals before or after.'

"13. Tipton by and through his attorney, Henry, filed several applications for executive clemency since the time of his conviction. All of the applications have been denied.

"14. On October 5, 1962, Bradley sent a letter to Mr. Charles McAtee, Pardon and Parole Attorney for the Governor, in which Bradley outlined Tipton's participation in the crime and also the fact that Tipton testified for the State in both of Mrs. Callahan's trials (see State's Exhibit No. 2).

"15. Tipton's plea of guilty, entered on April 11, 1955, was not made in reliance upon any promise of the county attorney, Bradley, or his own attorney, Henry, that he would be granted executive clemency. At the very most, Tipton was told by Henry that he (Henry) would attempt to obtain executive clemency for Tipton and that Bradley would write a letter regarding Tipton's participation and cooperation such as is related in Finding No. 7 above."

### "Conclusions of Law"

"1. Tipton's plea of guilty on April 11, 1955, was freely and voluntarily entered by him with full knowledge of the probable consequences thereof.

"2. Tipton's plea of guilty was not induced by promises and misrepresentations on the part of the County Attorney, Bradley, or his own attorney, Henry, as to the probable or collateral consequences of said plea.

"3. There was no fraud perpetrated upon Tipton by either the County Attorney, Bradley, or his own attorney, Henry, in respect to his entering a plea of guilty.

"4. Tipton, from the time of his preliminary hearing up to and including the time of his sentence, was represented by Lyndus A. Henry. Mr. Henry

was and is a competent, well-qualified attorney, and at all times represented Tipton in a reasonably proper manner.

"5. The Court had jurisdiction to accept Tipton's plea of guilty and sentence said defendant to life imprisonment.

"6. Tipton's plea of guilty and his sentence to life imprisonment did not violate the 5th, 6th and 14th Amendments to the Constitution of the United States or the Bill of Rights to the Constitution of the State of Kansas.

"7. The defendant Tipton's Motion to Vacate Judgment and Sentence is denied, and the costs of this proceeding are taxed against the movant.

"Dated this 13th day of March, 1964."

Following the adverse findings, conclusions and judgment, heretofore set forth at length, appellant's motions to amend the trial court's findings of fact and for a new trial on all issues were denied. Thereafter he gave notice of his appeal from the court's decision and judgment of March 13, 1964. Later, and on March 27, 1964, his motions for free records and appointment of counsel for purposes of review of the judgment on appeal were overruled, without prejudice to future action, and, at the same time, Wilson E. Speer, court-appointed counsel, who had represented appellant in the district court throughout the entire (60-1507) proceeding, was relieved from further appointment in the case.

Subsequently, and on June 15, 1964, the district court made an order authorizing appellant to proceed in the case on appeal *in forma pauperis*, pursuant to Rule 6(m) of this court. Still later, and on October 22, 1964, such court, on its own motion, set aside its prior ruling denying appellant's motion for appointment of counsel and, pursuant to this court's Rule 121(m), sustained appellant's prior motion for appointment of counsel on appeal. On the same day the court appointed Wilson E. Speer as counsel for appellant for purposes of prosecuting his appeal from its order denying him relief under 60-1507, *supra*. Mr. Speer fulfilled this obligation by filing a proper record and brief and by orally arguing the cause on the date appellant's appeal was heard by this court on its merits.

The nature of the grounds on which appellant based his right for relief in his motion under 60-1507, *supra*, appear from the heretofore quoted findings and conclusions of the trial court and need not be labored. The points relied on by him in his appeal from the ruling on that motion, which will be presently considered and disposed of in the order in which they are identified in his statement of points, read:

"1. The evidence does not support but contradicts the Court's findings of fact.

"(a) that appellant's court appointed counsel accurately conveyed to appellant the contents of his conversation with the county attorney,

"(b) that appellant informed his counsel that he was willing to throw himself on the mercy of the court,

"(c) that appellant's plea was not made in reliance upon any promise of the county attorney or his own court-appointed defense counsel.

"(d) that appellant had full knowledge of the probable consequences of his plea,

"(e) and that his court appointed counsel represented him in a reasonably proper manner.

"2. The Court erred in omitting to find that appellant's plea was changed to guilty upon his court appointed counsel's recommendation and pledge to obtain clemency, and as a result of appellant's belief that clemency would in fact result if he continued his cooperation.

"3. The Court erred in ruling as a finding of law that appellant's rights under the Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States and the Kansas Bill of Rights were not violated when the evidence showed that appellant changed his plea from not guilty to guilty in a capital case through the inducement of his own misunderstanding of the sentence to be imposed as a result of remarks or conduct of his court-appointed counsel and the failure of such counsel to afford full disclosure of the nature and duration of the sentence and the limitations upon any means of minimizing the effect of such sentence.

"4. The Court erred in admitting any evidence offered by the appellee when the appellee failed to file any responsive pleading to appellant's motion under section 60-1507 of the Code of Civil Procedure."

Subsections (a) to (e) incl., of appellant's point 1, are all based upon the premise the evidence does not support but contradicts the findings of the trial court. These findings, it is to be noted, were made by the same district judge who was called upon to preside and pass sentence upon the appellant at the time he entered the 1955 plea of guilty to murder in the first degree. Nothing would be gained by here laboring the evidence of record. It suffices to say we have carefully reviewed a long, tedious and confusing transcript and are convinced appellant's position "the evidence does not support but contradicts the trial court's findings of fact" lacks merit and cannot be upheld. Indeed, based upon our examination of the entire record the very most that can be said for appellant's position with respect to the claims of error now under consideration is that, while there may have been some evidence to the contrary, the record discloses an abundance of substantial competent evidence to support the findings, hereinabove identified as (a) to (e) incl.—thus bringing appellant's claims of error regarding such findings squarely within the long-established and decisive rules, recently reiterated in one of our latest decisions.

See *Finnell v. Patrons Co-operative Bank*, 193 Kan. 354, 394 P. 2d 116, where it is held:

"Where the trial court's findings are attacked because of insufficiency of the evidence, the power of a reviewing court begins and ends with the determination of whether there is any substantial evidence to support the findings.

"It is the function of the trier of facts, not a reviewing court, to determine which witness and what testimony it should believe." (Syl. ¶¶ 1, 2.)

From a factual standpoint the difficulty with appellant's claims with respect to his second point is twofold. In the first place the record does not warrant a conclusion his plea of not guilty was changed to guilty upon the recommendation of Henry, his court-appointed counsel. On the contrary its fair import is, that after being fully advised by Henry as to what could well happen if in view of the evidence known to be in the hands of the prosecuting authorities he were to stand trial on his plea of not guilty, appellant concluded it would be to his best interests to enter a plea of guilty to murder in the first degree with the understanding the state would not ask for imposition of the death penalty. With this in mind he changed his original plea and, as is obvious, the death sentence was not imposed. Secondly, the record before us does not disclose that Henry ever unqualifiedly promised appellant he would obtain clemency for him. The utmost that can be said for this phase of the claim is that Henry told appellant he would try to obtain clemency. In this connection it is interesting to note that following appellant's conviction and sentence Henry more than fulfilled that promise by making several unsuccessful attempts through the proper state authorities, to obtain clemency for him. In view of what has been heretofore stated it cannot be successfully argued the court erred in failing to make the finding referred to in the point now under consideration.

What has been stated and held up to his point could well dispose of this appeal. However, we are not averse to giving consideration to the two remaining points on which appellant relies as grounds for reversal of the judgment.

In point 3, wherein appellant challenges the trial court's finding and conclusion No. 6, *supra*, to the effect his plea of guilty and sentence to life imprisonment did not violate any of his constitutional rights, the gist of all complaints raised by appellant seems to be that Henry, his court-appointed counsel was incompetent and failed to adequately represent him. The reasonable limits

of a judicial opinion will not permit a review of all of the evidence supporting the trial court's conclusion. It suffices to say the record discloses that at the time Henry was appointed counsel in the criminal action resulting in the involved judgment and sentence he was an able and experienced practicing attorney who had represented other criminals and was familiar with the criminal law of this state and that after he had accepted the appointment, as appellant's counsel, he diligently, faithfully, conscientiously, and competently performed the duties required of him under such appointment. Moreover, the record further discloses that all insinuations and contentions of appellant to the contrary lack merit and cannot be upheld.

Appellant's fourth and final point is that the court erred in admitting any evidence offered by the appellee (state) when the appellee failed to file any responsive pleading to his 60-1507 motion. There are at least two sound reasons for denying appellant's claim on this point. In the first place there is nothing in this record to indicate, in fact it is not even suggested, that appellant made any objection to the evidence offered by appellee during the hearing on the motion. In that situation the long established rule of this court is that he cannot now complain because appellee's evidence was either offered or admitted. In the next place—as we construe the provisions of 60-1507—when a full and complete evidentiary hearing is afforded a plaintiff under its terms it is neither necessary nor required that the defendant answer or otherwise plead to the plaintiff's motion in order to refute the allegations of the motion or the evidence offered by the plaintiff in support thereof. See Gard's Kansas Code of Civil Procedure Annotated § 60-1507[b], p. 707.

We find nothing in the record or in arguments advanced by appellant with respect thereto which either warrants or permits a reversal of the trial court's judgment and it must be affirmed.

It is so ordered.