No. 45,628

Earl White, *Appellant,* v. State of Kansas, *Appellee.*

(455 P. 2d 562)

 Opinion filed
June 14, 1969. 

*Maurice P. O'Keefe, Jr.,* of Atchison, argued the cause and was on the brief for the appellant.

*Robert D. Caplinger,* county attorney, argued the cause, and *Kent Frizzell,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This 60-1507 appeal was previously before us (*White v. State,* 201 Kan. 801, 443 P. 2d 182) and we reversed and remanded the case to the district court with directions to make findings of fact and conclusions of law in accordance with Rule No. 121 (*j*) and to enter a judgment in conformity therewith.

The disposition of the case deals with the over-all question of the voluntariness of petitioner's plea of guilty and the related point whether or not the district court abused its discretion in denying a motion to withdraw the plea and a motion to modify sentence.

The facts were amply set forth in the earlier opinion and need not be repeated other than to state that petitioner, charged with murder in the first degree for killing his wife, entered a plea of guilty on September 19, 1966, to the reduced charge of second degree murder, and was sentenced to confinement at hard labor in the state penitentiary for the term of his natural life. In his K. S. A. 60-1507 motion petitioner sought to set aside the judgment and sentence on the ground his plea was entered pursuant to a promise made to his retained counsel, Mr. Charles S. Scott, by the county attorney, Mr. William E. Stillings, outside the presence of the court, that if petitioner would plead guilty to murder in the second degree, the county attorney would recommend a sentence for a term of years, but the county attorney reneged on the agreement; consequently, petitioner's plea of guilty was involuntarily made. After a full evidentiary hearing on June 19, 1967, at which petitioner, Scott, and Stillings testified, the court denied the motion.

In accordance with our mandate, the district court has made findings of fact and conclusions of law. Those pertinent to this appeal are as follows:

"V. That there were several discussions between Scott and Stillings at the

request of Scott as to the possibility of a plea to murder in the second degree and what the attitude of the County Attorney would be relative to recommending a sentence to the Court at the time of sentencing. That Stillings stated that in such a case he would recommend a long term of years in the order of forty (40) years.

"VI. Earl White's case was set for trial on September 19, 1966, at which time Mr. Scott announced to the Court that Earl White would enter a plea of guilty to second degree murder. That the Court inquired of Earl White 'are you making this plea of guilty because you are guilty not because of any promises, threats or duress of any kind against you, in other words, is this a free and open plea of yourself?' That Earl White answered 'Yes, free and open.'

"VII. That the Court, prior to passing sentence, heard the plea and argument of Charles S. Scott, and the Court discussed with Earl White and his counsel, Mr. Scott, the instant offense and previous offenses. That the Court gave Earl White and his counsel every opportunity to present more to the Court for it's consideration and further gave every indication that the Court was going to give a maximum sentence. That the Court then stated 'The Court again inquires of you, Mr. White, is there any just cause or reasonable excuse to show why the judgment and sentence of this Court not be pronounced upon you?' to which Mr. Scott replied, 'There is none for the defendant.' That the Court thereupon sentenced Earl White to confinement at hard labor in the Kansas State Penitentiary for the term of his natural life.

"VIII. That on September 20, 1966, Mr. Scott filed two (2) motions to-wit: Motion to Withdraw Plea of Guilty and Permission to Enter his Plea of Not Guilty and Motion to Modify Sentence. Said motions were heard by the Court on October 27, 1966, at which time Earl White, his counsel Charles S. Scott and the County Attorney, William E. Stillings, were present. Both Charles S. Scott and William E. Stillings fully advised the Court as to their conversations and agreement and Mr. Stillings made his recommendation to the Court that Earl White be given 'a sentence to a long term of years'. That both attorneys stated that at no time was the Court a party to any of their discussions or agreements. That the Court considered the arguments and statements of the County Attorney, William E. Stillings, and counsel of Earl White, and made the finding that 'the sentence was warranted' and the motions were overruled.

. . . . . . . . . . . . . . .

"X. That the agreement between Charles S. Scott and William E. Stillings was to the effect that upon a plea of guilty by Earl White to murder in the second degree, that Stillings would not recommend a life sentence but would recommend a sentence of a long term of years, in the order of forty (40) years. That it was understood by Stillings and Charles S. Scott that the Court had the final responsibility and they could not bind the Court.

"XI. That White's plea of guilty on September 19, 1966, was made with the full knowledge that it was up to the Court to determine what sentence would be imposed. That although opportunity was given no request was made by White or Mr. Scott that the Court ask Stillings for his recommendation prior to imposing sentence.

"XII. That White's plea of guilty on September 19, 1966, was not made in reliance upon any promise of the County Attorney, Stillings, or his own attorney,

Charles S. Scott, that he would receive a punishment for a term of ten to fifteen years. At the very most, White was told by Scott that Stillings would not be asking for a life sentence but would recommend a long term of years."

The court concluded that petitioner's plea was freely and voluntarily entered with full knowledge of the probable consequences thereof; that there was no fraud perpetrated upon petitioner by either the county attorney or his own attorney in respect to his entering a plea of guilty; and that the motion should be denied.

It is a fundamental principle of law in this state that a plea of guilty, in order to be valid, must be freely, knowingly and understandingly made. If such plea is induced by promises or threats which deprive it of its voluntary character, it is void, and a conviction based thereon is open to collateral attack. (*Mann v. State,* 200 Kan. 422, 436 P. 2d 358; *State v. Richardson,* 194 Kan. 471, 399 P. 2d 799; *Miller v. Hudspeth,* 164 Kan. 688, 192 P. 2d 147.) In a 60-1507 proceeding the question of whether a plea of guilty was voluntarily entered is a question of fact, and the burden of proving the involuntariness of such plea is upon the movant. (*Mann v. State,* supra; Rule No. 121 (*g*), Rules of the Supreme Court, 201 Kan. XXXIII.)

At the 60-1507 hearing petitioner testified that it was his understanding from Scott that if he pleaded guilty he would receive a sentence of ten to fifteen to twenty years. A proffer of corroborating testimony by other witnesses which tended to substantiate petitioner's understanding, was rejected by the trial court. Even if we assume the court erred in excluding this testimony, petitioner is in no position to attack the court's finding No. X as to the contents of the agreement—namely, the county attorney would not recommend a life sentence but would recommend a sentence of a long term of years, which recommendation would not be binding upon the trial court. The nature and substance of the alleged plea agreement was a controverted issue, and the finding, being supported by substantial evidence, cannot be disturbed. (*Lloyd v. State,* 197 Kan. 389, 416 P. 2d 766; *Tipton v. State,* 194 Kan. 705, 402 P. 2d 310.) Moreover, petitioner's testimony pertaining to his version of the agreement would imply, contrary to the court's finding and the record supporting that finding, that the agreement was binding on the court. The court specifically found petitioner's plea was not made in reliance upon any promise from either the county attorney or his own attorney that he would receive a sentence for

a term of ten to fifteen years; and at the very most, Scott told him the county attorney would not be asking for a life sentence but would recommend a term of years.

The propriety of plea discussions and plea agreements in criminal cases was discussed in depth and specifically approved in our recent decision of *State v. Byrd*, 203 Kan. 45, 453 P. 2d 22. There, we said the county attorney may, in proper instances, engage in plea discussions for the purpose of reaching a plea agreement. Ordinarily, he should engage in such discussion only through defense counsel, and the trial judge should have no part in such negotiations. The prosecutor may agree to make, or not to oppose, favorable recommendations as to the sentence which should be imposed upon the defendant entering a plea of guilty, but he should avoid any action which might reasonably appear to make justice and liberty subjects of bargaining and barter. By way of admonishment we cautioned that all discussions and agreements should be based upon an understanding that such agreements are not binding upon the trial judge, and that even though a guilty plea was received as a result of a prior agreement, nevertheless, the judge was free to reach his own independent decision on whether to approve any concession upon which the agreement was premised.

In determining whether or not the plea of guilty should be vitiated because involuntarily made, we shall first consider the effect, if any, upon the trial judge of not having before him the county attorney's recommendation at the time of sentencing. The transcript of proceedings reveals the court was in no way apprised of the plea agreement by either defense counsel or the prosecutor. In fact, the court did not ask the county attorney for his recommendation in respect to an appropriate sentence. Prior to acceptance of his plea, petitioner was fully informed of the consequences thereof and the fact that his sentence could be from ten years to life. He further told the judge his plea of guilty was being made because he was guilty and was not the result of any promises. Defense counsel was given full opportunity to make known the county attorney was not requesting a life sentence and did make a statement of a mitigating nature prior to allocution. Actually, there were two allocutions; but at no time during the ensuing colloquy was the plea agreement mentioned. Before pronouncing sentence, the court reviewed in detail petitioner's previous record of criminal activity— a felony conviction in the state of Washington, and a shooting inci-

dent in Atchison of which he was acquitted but found guilty of possession of a firearm after commission of a felony. The latter events stemmed from marital difficulty with his wife. Petitioner had been placed on probation for the firearm conviction and was so serving at the time the present offense was committed. A careful reading of the transcript discloses the court was thoroughly familiar with petitioner's discordant marital life and previous unlawful acts. From the trial judge's remarks we are satisfied that he exercised his own independent judgment in imposing what in his mind was an appropriate sentence for the reduced charge. Whether or not the county attorney's recommendations would have affected the court's judgment seems more a matter of speculation and afterthought than a sound legal basis for vitiating the plea. At any rate, we are of the opinion that any shadow of infirmity which may have been cast upon the voluntariness of petitioner's guilty plea because of the court's lack of knowledge of the county attorney's recommendation was ameliorated by the subsequent proceedings, initiated the day after sentencing, at which the county attorney's recommendation was made known and the court was given the opportunity to modify the sentence or permit the withdrawal of the plea.

At the hearing on petitioner's motion to modify the sentence and his motion to withdraw his plea of guilty, the court was fully apprised of the plea agreement, and the county attorney, pursuant to that agreement, specifically recommended "a sentence to a long term of years." The judge, in overruling the motions, commented that despite the agreement to which he was not a party, he was of the opinion the life sentence was warranted. In these subsequent proceedings the court was given full opportunity to reconsider the sentence and the effect, if any, of the county attorney's recommendation. In our opinion the posture of the case at that point was the same as it was had the petitioner first entered his plea of guilty to the reduced charge and the county attorney made known his recommendation in accordance with the terms of the plea agreement.

At the time the agreement was made, and later when the plea was entered, the attorneys, as well as petitioner, knew the court was not in any way bound by the terms of the agreement. In spite of petitioner's assertions now that he clearly understood he was to receive a sentence of a term of years, there was evidence to the contrary and the court found his plea was not made in reliance upon such a promise, and that he was merely told by his own attorney

the prosecutor would not ask for a life sentence but would recommend a long term of years. (See finding No. XII, supra.) As a part of the plea concession the charge was lowered to that of second degree murder with the consent of the county attorney, which alleviated the death penalty as a possible sentence. The transcript discloses petitioner was fully aware at the time he pleaded guilty that he could be sentenced from ten years to life. He is hardly in a position to complain now that the court did not go along with the prosecutor's recommendation, since he had no assurance of that fact before he entered the plea.

A well-settled rule in this state is that once a plea of guilty has been entered and sentence pronounced whether or not the plea can later be withdrawn is a matter within the sound discretion of the trial court, whose judgment will not be disturbed unless there has been an abuse of that discretion. (*State v. Byrd,* supra; *Addington v. State,* 198 Kan. 228, 424 P. 2d 871; *State v. Downs,* 185 Kan. 168, 341 P. 2d 957; *State v. Walker,* 177 Kan. 752, 281 P. 2d 1070; *State v. Nichols,* 167 Kan. 565, 207 P. 2d 469.) Permission to withdraw a plea depends on the facts and circumstances of each case. If the ends of justice will be served by permitting the withdrawal, and manifest injustice to the defendant would result from refusal, permission to withdraw the plea should be granted. (*State v. Byrd,* supra.)

In *State v. Nichols,* supra, this court pointed out that among other things, a motion to withdraw a plea of guilty should allege a defendant is not guilty of the crime charged, and at the hearing on the motion evidence may be adduced in favor of or opposed to the motion. True, in the present case the motion to withdraw the plea alleged petitioner had a meritorious defense to the charge. Nothing was presented in support of the motion on this ground other than the argument of defense counsel that petitioner and his wife lived in constant turmoil marked with acts of infidelity on her part, plus the fact the actual killing had taken place in the presence of three police officers, and hence petitioner acted in the "heat of passion." These factors may have played some part in the county attorney's willingness to reduce the charge from first degree to second degree murder. They, however, even if supported by evidence, would not, in the event of trial, justify a manslaughter instruction to the effect that the killing was committed in the "heat of passion" without a design to effect death, all as more fully explained in *State v. McDer-*

*mott,* 202 Kan. 399, 449 P. 2d 545. The record indicates that when the guilty plea was accepted and sentence was imposed the judge was familiar with the previous marital discord and the circumstances leading up to the killing. At the time of his plea, petitioner and his attorney were aware of any defense to the murder charge, and further, that there was no commitment from the court as to what the sentence would be. Petitioner took his chances just as any other accused where the court has a range of discretion in imposing an appropriate sentence. As previously indicated, the sentence pronounced was unaffected by the lack of the prosecutor's recommendation pursuant to the plea agreement. The claim of a meritorious defense was insufficient to warrant our saying the court abused its discretion in denying the motion to withdraw the plea.

Under the facts and circumstances disclosed by the record we are unable to see that the ends of justice would be served or manifest injustice result from refusal by the trial judge to permit the withdrawal of the guilty plea or to modify the sentence. The numerous cases cited and relied on by petitioner to sustain his position have been examined; however, because of the peculiar factual situation presented here, we find none of them persuasive. Any question of the involuntariness of petitioner's plea is completely dispelled by the import of the subsequent proceedings had at the hearing of his post-sentence motions.

In concluding that the trial court properly determined petitioner's plea should not be set aside and his sentence vacated, we hasten to add that our conclusion is not to be understood as placing a stamp of approval on the failure of a prosecutor to carry out the terms of a plea agreement. In fact, were it not for the unique circumstances here, we would have grave doubt of the propriety of the trial court's action.

One other point deserves mention. Petitioner urges that since the journal entry and transcript of proceedings disclose the court specifically imposed sentence under the provisions of K. S. A. 21-403, which authorizes only a sentence of not less than ten years, a life sentence could not be imposed. The contention is answered by our decision in *Dunn v. Crouse,* 192 Kan. 180, 386 P. 2d 228, where we said that G. S. 1949 (now K. S. A.) 21-403 and 21-109, are to be construed together in imposing sentence for the offense of murder in the second degree, and the district court may order any sentence to be imposed not less than the minimum prescribed. The fore-

going statutes authorize imposition of a life sentence within the trial court's discretion. (*State v. Akins,* 194 Kan. 514, 399 P. 2d 848.) The failure of the journal entry to show that sentence was imposed under K. S. A. 21-109 as well as 21-403 is, at most, an irregularity which does not affect the validity of petitioner's sentence, and provides him with no ground for relief in this proceeding. Upon proper motion, or the court's own initiative, the journal entry of sentence may be corrected by an order *nunc pro tunc.* (*Kiser v. State,* 196 Kan. 736, 413 P. 2d 1002; *Dun v. Crouse,* supra.)

The judgment is affirmed.

FATZER, J., dissenting: In my opinion the court has erroneously affirmed the judgment of the district court, and I must respectfully dissent. The case should be reversed upon the rule of law stated in Syllabus No. 1 of the court's opinion.

I have always had the notion that when people make agreements they should live up to them. This is especially true where a county attorney makes an agreement with counsel for a defendant in the disposition of a criminal case.

The district court specifically found that Stillings made an agreement with Scott that if defendant would enter a plea of guilty to murder in the second degree, Stillings would recommend to the court the defendant be sentenced to a long term of years—not to life imprisonment.

Relying upon the agreement between Stillings and his attorney, the defendant entered his plea of guilty to murder in the second degree. But Stillings failed to live up to his agreement; he stood silent in open court prior to and during the imposition of a sentence of life imprisonment. It was only after sentence was imposed and the court had left the bench, that Stillings advised Judge Page of his agreement with Scott. This conversation occurred just outside the courtroom where Stillings and Scott stopped the court on his way to chambers, immediately following the imposition of sentence. In short, the defendant lived up to his agreement, but the state did not.

Where a plea of guilty is induced by promise of lenience by the prosecutor of the character here involved, and it is not lived up to, the plea is not a voluntary act. (*Machibroda v. United States,* 368 U. S. 487, 7 L. Ed. 2d 473, 82 S. Ct. 510; *Bistram v. United States,* 237 F. 2d 243 [8th Cir. 1956]; *Motley v. United States,* 230 F. 2d 110

[5th Cir. 1956]; *United States v. Paglia,* 190 F. 2d 445 [2d Cir. 1951]; *People v. Odlum,* 91 Cal. App. 2d 761, 205 P. 2d 1106; *People v. Gilbert,* 25 Cal. 2d 422, 154 P. 2d 657; *Roberts v. People,* 158 Colo. 76, 404 P. 2d 848.) A conviction based upon such a plea is open to collateral attack.

The record discloses that facts existed, which, without any fault of the defendant, were not presented to the court. Scott was under no duty to "prod" Stillings to make his recommendation known to the court. As the state's representative, and as an officer of the court, Stillings had the moral and ethical duty to affirmatively advise the court of his agreement with his fellow lawyer. Consequently, the defendant is entitled to have his plea and the sentence vacated, and to go to trial on a plea of not guilty where he alleges, as he does here, that he has a valid defense to the charge. (*Roberts v. People,* supra.)

FONTRON, J., joins in the foregoing dissent.