**Earl WHITE, Appellant,**

v.

**R. J. GAFFNEY, Warden,\* Kansas State Penitentiary, Appellee.**

**No. 132–70.**

United States Court of Appeals, Tenth Circuit.

Dec. 28, 1970.

Rehearing Denied Dec. 12, 1971.

---

\* Pursuant to Rule 43(c), F.R.A.P., R. J. Gaffney, Warden, the successor to Warden Sherman H. Crouse, has been substituted as the proper appellee.

Brian J. Moline, Wichita, Kan., for appellant.

Edward J. Collister, Jr., Asst. Atty. Gen. of Kan. (Kent Frizzell, Atty. Gen., and Richard H. Seaton, Asst. Atty. Gen., on the brief), for appellee.

Before PICKETT, BREITENSTEIN and HILL, Circuit Judges.

PICKETT, Circuit Judge.

Appellant White brought this habeas corpus action in the United States District Court for the District of Kansas seeking his release from the Kansas State Penitentiary where he is serving a life sentence which followed his plea of guilty to murder in the second degree. He alleges that his guilty plea was involuntary because the prosecuting attorney failed to recommend to the court a sentence for a term of years rather than life imprisonment, as agreed. White exhausted his remedies in state court and the United States district court dismissed the action upon consideration of the state court record, which included a transcript of the evidence produced there.

There is no dispute as to relevant facts. In 1966 White was charged in the District Court of Atchison County, Kansas with the crime of murder in the first degree. On the day the case was set for trial, White appeared in open court with his counsel and entered a plea of guilty to second degree murder and was sentenced to life imprisonment. Thereafter, post conviction proceedings were instituted pursuant to Kansas statute attacking the validity of the sentence. Following an evidentiary hearing the state district court made findings of fact and conclusions of law, and denied relief. This judgment was affirmed by the Kansas Supreme Court, White v. State, 203 Kan. 687, 455 P.2d 562 (1969).

The state court record reflects that pending trial defense counsel and the county attorney had several discussions as to the possibility of accepting a plea of guilty to second degree murder. The county attorney advised defense counsel that he would not object to such a plea and thought an appropriate sentence would be for a term of years and not life imprisonment. Defense counsel testified that the county attorney agreed that if a plea to second degree murder was entered, the county attorney would recommend to the court that the sentence

be for a long term of years, and not life imprisonment.[1] White was so advised. On the date the case was set for trial, White pleaded guilty to second degree murder.[2] Prior to the sentence, in response to questions by the court, White stated that the plea was voluntarily made, free from promises, threats or duress of any kind. The county attorney made no recommendations, whereupon White was sentenced to life imprisonment. Immediately following the sentencing, defense counsel and the county attorney discussed the matter with the judge in his chambers, where it was disclosed that the county attorney had agreed to make the aforesaid representation. The court refused to modify the sentence or permit the withdrawal of the guilty plea. A formal motion to withdraw the plea was filed and heard the following day. The court, in denying the motion, stated that it was not a party to any agreement and if the recommenda-

1. In the State's brief, the Attorney General states:

    "A life sentence under Kansas law in 1966 meant that the prisoner could never become eligible for parole, whereas a term of years would mean parole eligibility after passage of a given length of time, which varied with the length of the sentence."

2. As to his discussions with Mr. Stillings, the County Attorney, relating to a guilty plea to second degree murder and recommendations to be made, defense counsel testified as follows:

    "Q. And what did these conversations consist of?

    "A. I don't recall the exact dates, but I visited with Mr. Stillings with respect to disposition of this case and we discussed this matter at his office, not here in the courthouse, but at his private office and the discussion centered around what would be perhaps the proper way of disposing of this matter. So, we agreed upon entering a plea of guilty to second degree murder and he at that time indicated, at least, that he would recommend a term of years if we were to enter a plea of guilty to second degree murder. So, I later on, sometime, I advised Mr. White that this was the arrangement that I had with Mr. Stillings if we were to enter a plea of guilty to second degree murder.

    "Q. All right. Did you inquire more of Mr. Stillings as to whether this recommendation would be followed or not?

    "A. Well, all of us know that the Judge is not necessarily committed to whatever we agree, but he did mention that the Judge is inclined to follow recommendations that are made by him or from his office with respect to penalty that would be imposed; and so, with that understanding, I felt that perhaps if he were to make a recommendation, well, then, certainly Judge Page would at least consider it.

    "Q. All right. As a subsequence of this, did you advise Mr. Earl White of this conversation that you had with the County Attorney?

    "A. I did.

    "Q. And was it—what Mr. White's understanding or what did he say back to you?

    "A. Mr. White said if that would be the case, then, he would be willing to follow my advise (sic) to enter a plea of guilty to second degree murder.

    "Q. All right. Had you had any previous conversation with Mr. White as to possible life in imprisonment?

    "A. Oh, yes, we had several conversations.

    "Q. What did he say whether he would plea to second degree murder if he would get life in imprisonment?

    "A. He was advised by Mr. Foley that would be perhaps the best he could do for him. I said, 'Well, I would see if I could do better in lieu of going to trial on this matter.' He said, 'Well, if you could, I certainly would be very happy to follow your advise (sic) on the matter.' So, I did advise him that after I talked to Mr. Stillings that we had an understanding that if he were to enter a plea of guilty to second degree murder that we would perhaps get a term of years, at least he would recommend a term of years.

    "Q. All right. And when Mr. White plead guilty to second degree murder, did the County attorney make any recommendation at that time?

    "A. It was rather unusual. At that time, we appeared here before Judge Page and Mr. Stillings apparently didn't have the opportunity to make the recommendation or at least he didn't make any recommendations and of course Judge Page immediately pronounced sentence of life term."

tion had been made as agreed, the sentence would have been the same. As to the agreement between defense counsel and the county attorney, the state court, in the post conviction proceedings, found:

"That there were several discussions between Scott and Stillings at the request of Scott as to the possibility of plea to murder in the second degree and what the attitude of the County Attorney would be relative to recommending a sentence to the Court at the time of sentencing. That Stillings stated that in such a case he would recommend a long term of years in the order of forty (40) years."

Clearly, the evidence supports this finding.

We have recognized that negotiations between the prosecution and defense are valuable in the disposition of criminal litigation when properly conducted. Lesley v. State of Oklahoma, 407 F.2d 543 (10th Cir. 1969); see also State v. Byrd, 203 Kan. 45, 453 P.2d 22 (1969).

■ The law is settled that a plea of guilty induced by promises or threats which deprive the plea of its voluntary character is void and a conviction based upon it may be set aside in collateral proceedings. A plea of guilty is a waiver of a constitutional right to a jury trial. The plea should be accepted only if voluntarily and understandingly made. It must be free of factors or inducements which unfairly influence an accused when deciding what his plea shall be. It is difficult to perceive of a more effective influence on a decision whether or not to plead guilty to a criminal offense than an agreement with a prosecuting officer relative to his recommendation as to a sentence. In Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962), where one of the allegations was that an assistant United States attorney advised the accused prior to arraignment, that the total sentence on a plea of guilty would not exceed twenty years, when in fact it totaled forty years, the Court said:

"There can be no doubt that, if the allegations in the petitioner's motion and affidavit are true, he is entitled to have his sentence vacated. A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A sentence based upon such a plea is open to collateral attack. * * *"

As said in Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927):

" * * * A plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences. * * *"

See also McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

■ In proceedings after the guilty plea was entered, the sentencing judge stated that if the recommendation had been made it would have been rejected, and furthermore, that the county attorney at the motion for permission to withdraw the guilty plea made the recommendation, which was not accepted by the court. The Kansas Supreme Court, in upholding the plea, recognized the fundamental principle of law that to be valid a plea of guilty must be freely, knowingly and understandingly made, and not induced by promises or threats. It also recognized that discussions and plea agreements in criminal cases are approved in Kansas. The court, however, apparently thought that the ineffectiveness of the county attorney's recommendation, had it been made, was material to a determination of the voluntariness of the plea. The question is not whether the promise was effective as to the court's decision, but whether it influ-

enced White in making his decision to plead guilty. The court also commented that the sentencing judge gave full consideration to the plea agreement when overruling the motions to withdraw the guilty plea, stating that it is a well-settled principle in Kansas that the right to withdraw a plea of guilty is within the sound discretion of the trial court.[3] It appears to us that the Kansas Supreme Court overlooked the essential constitutional defect in the plea and that in giving effect to the sentencing court's views on a motion to withdraw the plea, assumed that White's plea would have been the same had he known that there was to be no recommendation. Although White knew that the sentencing court was not bound by the county attorney's recommendation, in determining whether to enter his plea of guilty, he had the right to rely upon the representations of the county attorney.[4] Whether or not the recommendation would have been effective is immaterial, although the record indicates that the district judge generally followed the recommendations of the county attorney. The record is clear that without the agreement the guilty plea would not have been made and there would have been no post-sentence action.

The judgment is reversed and the case remanded with directions that it be held in abeyance for a period of ninety days from the issuance of the mandate, If, within that time, the state reinstates the not guilty plea or permits the appellant to enter a new plea, the case shall be dismissed. If the state does not take such action within the ninety days, the court shall order appellant's release.

---

3. With reference to the post-sentence proceedings, the court said:

   " * * * From the trial judge's remarks we are satisfied that he exercised his own independent judgment in imposing what in his mind was an appropriate sentence for the reduced charge. Whether or not the county attorney's recommendations would have affected the court's judgment seems more a matter of speculation and afterthought than a second legal basis for vitiating the plea. At any rate, we are of the opinion that any shadow of infirmity which may have been cast upon the voluntariness of petitioner's guilty plea because of the court's lack of knowledge of the county attorney's recommendation was ameliorated by the subsequent proceedings, initiated the day after sentencing, at which the county attorney's recommendation was made known and the court was given the opportunity to modify the sentence or permit the withdrawal of the plea." White v. State, 203 Kan. 687, 455 P.2d 562, 567 (1969).

4. A careful study of this subject with a review of the authorities was made by Judge Weinfeld in United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244 (S.D.N.Y.1966).