NOT DESIGNATED FOR PUBLICATION

Nos. 118,996
118,997

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JONATHAN LEVI MANGOLD,
*Appellant*.


MEMORANDUM OPINION


Appeal from Marion District Court; MICHAEL F. POWERS, judge. Opinion filed August 9, 2019. Convictions affirmed, sentences vacated in part, and cases remanded with directions.

*Kristen B. Patty*, of Wichita, for appellant.

*Rachel L. Pickering*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and HILL, JJ.

PER CURIAM: Jonathan Mangold asks us to set aside his convictions in two cases. After pleading no contest, the court sentenced Mangold to serve a 30-month prison sentence in one case and then a consecutive 28-month sentence in the second case. Experiencing a change of heart, Mangold sought to withdraw his pleas. The court denied his motion and he now appeals. Our review of the record reveals that Mangold has not shown us manifest injustice that would call for a postsentence plea withdrawal in either case. We find no error of law and no good reason to grant him relief. We do, however, find some technical sentencing corrections that need to be made so we remand the case

1

for that to be accomplished. We affirm Mangold's convictions, vacate his sentences in part in both cases, and remand with directions.

*We summarize the charges.*

The State charged Mangold with six crimes in Marion County District Court case no. 17CR124:

- Possession of a controlled substance, morphine, a severity level 5 drug felony;
- Possession of a hallucinogenic drug, THC, a class A nonperson misdemeanor;
- Possession of drug paraphernalia, a class A nonperson misdemeanor;
- Driving while license is canceled, suspended, or revoked, first conviction, a class B nonperson misdemeanor;
- Transportation of liquor in an open container, an unclassified misdemeanor; and
- Operation of a motor vehicle without a tag light, a traffic infraction.

About a week later, the State charged Mangold with five more crimes in Marion County District Court case no. 17CR133:

- Possession of a controlled substance, methamphetamine, a severity level 5 drug felony;
- Interference with law enforcement, a severity level 9 nonperson felony;
- Possession of a hallucinogenic drug, THC, a class A nonperson misdemeanor;
- Battery against a law enforcement officer, a class A person misdemeanor; and
- Possession of drug paraphernalia, a class A nonperson misdemeanor.

*Because of the claims, we elaborate on the plea process.*

In both cases, Mangold agreed to plead no contest on all eleven charges. In his plea agreement, Mangold admitted to knowing several points of law. He acknowledged

2

that the Kansas Sentencing Guidelines Act would apply to his crimes. He understood that a presumptive sentence would be determined by the court by combining the severity level of his current crimes of conviction and his prior criminal history score. Mangold also understood that the district court may depart from the presumptive sentence in some cases. He acknowledged that, when entering a plea to more than one offense, the court could, in its discretion, order that the sentence imposed for each offense be served concurrently or consecutively.

Mangold further acknowledged that if sentenced to the presumptive sentence, an appellate court would only have jurisdiction to hear appeals based on the accuracy of his criminal history score and the severity level determination of his crimes.

At the plea hearing, the State informed the court that there were no agreements about sentencing. The district court addressed Mangold and reviewed the six charges against him in 17CR124 and then the five charges in 17CR133. He waived his right to a preliminary hearing and told the district court that he had read the plea agreement and discussed it with his attorney before he signed it. He said he wanted the judge to accept the agreement and let him plead to the charges.

The district court carefully explained to Mangold what he was doing:

"Jonathan, I'm going to go through a lot of what is already in this plea agreement, with you. And the reason I'm going to go over it again, even though you've already signed this agreement is not because I'm trying to talk you out of it, or into it, either way, but we're recording this. And I need to have a record that reflects that I—that I asked you these questions, and that you answered these questions, so that it's clear that whatever you end up doing, you're doing it because you feel like it's what you should do, and that you're doing it of your own free will, and you're not doing it because someone's forcing you, or threatening you, or bribing you, I guess, to do something."

3

Mangold waived a formal arraignment. The judge told him that he could change his mind at any time "until we get done, today." The district court explained to Mangold his trial and appellate rights and informed him that, if he entered a plea, he would give up all of those rights. Mangold said he understood. The district court explained the possible sentences for the two cases' combined three felony crimes. Mangold said he understood and did not have any questions. The court then explained the possible sentences for the two cases' combined eight misdemeanors. Again, Mangold said he understood and did not have any questions.

The judge then asked Mangold a series of important questions about any threats or possible coercion:

"THE COURT:  Other than the plea agreement, which you and I have talked about, here, the six or seven page document you signed, has anyone promised you anything to get you to plead to [the] charges, here?

"[MANGOLD]:  No, sir.

"THE COURT:  Has anyone forced you, threats—threatened you, pressured you, in any way?

"[MANGOLD]:  No, sir.

"THE COURT:  So, if I ask how you want to plead, and you plead either guilty or no contest to any or all of these charges, will you be doing that freely and voluntarily?

"[MANGOLD]:  Yes, sir."

The court reviewed the factual basis for the charges in both cases, and Mangold said he was "positive" he understood the charges against him. Mangold said he did not need any more time with his attorney before entering his plea. The defense counsel told the court that his recommendation to Mangold was to not enter into a plea because it was too early in the process. But Mangold wanted to go forward with the pleas. The court ruled that Mangold made a knowing waiver of his trial in both cases.

The court then asked Mangold why he wanted to "waive everything" and plead to all the charges. Mangold told the court he wanted to accept responsibility for his actions:

"Because I've learned—I've been doing this a long time, Your Honor, and I hate to admit that, but when I've done something wrong, I can't sit back and allow others to take a fall for what I've done, or prolong the situation. It's best to just get it over with. And I've done wrong, and I—I need to accept the responsibility for that, and that's what I'm doing."

The judge asked if he was taking any medications that affected his thinking or whether he should be taking medication for his mental health. The court suggested that generally defendants wanted their attorney to investigate their case before entering a plea. Mangold responded that he knew "beyond a reasonable doubt I was in possession of a vehicle which had morphine and drugs in it, and I had—I was caught with a toke pipe in my possession. So, I mean, there's no getting around—[ifs, ands or buts], I did that. I have to accept that." The court gave Mangold another opportunity to change his mind, but Mangold said he wanted to enter his pleas.

The district court found Mangold was alert, intelligent, and competent to enter pleas in his cases. The court read through each charge in 17CR124, and Mangold entered a plea of no contest to each one individually. The court then read through the charges in 17CR133, and Mangold again answered each charge in turn with a plea of no contest. The court accepted the pleas as freely, knowingly, voluntarily, and intelligently made, although against the advice of counsel. The district court found Mangold guilty on all charges and ordered a presentence investigation.

*The court imposed a mix of concurrent and consecutive sentences.*

Before sentencing, Mangold asked for a departure sentence which the State opposed. After recounting Mangold's criminal record and history score, the court denied

5

his motion for a dispositional departure in both cases, finding the reasons cited could not justify a departure. In 17CR124, the court imposed a 30-month prison term and all of the misdemeanor sentences were concurrent with that sentence. In 17CR133, the court applied a special rule since it was a third subsequent felony drug conviction and the crime was committed while Mangold was on felony bond. This meant the primary offense sentence was a presumptive prison sentence that had to be served consecutive to Mangold's sentences in 17CR124. The court imposed a 28-month sentence for that conviction and then imposed concurrent sentences for all remaining counts.

After he was sentenced, Mangold moved to withdraw his plea in each case. He alleged that the plea did not address areas required by law, such as what charges would be dismissed and what the State's recommendations would be at sentencing. Mangold also alleged that he was threatened and coerced into entering a plea on all the charges by a law enforcement officer who said he would harm one of Mangold's family members. Mangold claimed the officer did not want the footage from his body camera or many witnesses to his police brutality to come out at a trial. In a pro se supplemental argument in support of his motion to withdraw his pleas, he described encounters with the officer and alleged the officer threatened to harm Mangold's children unless he entered pleas in both cases.

At the hearing on Mangold's motion, Mangold's attorney proffered that Mangold's testimony would be the same as the information he provided in his pro se motion. Counsel informed the court that Mangold's position was that his pleas were not freely and voluntarily given based on threats made to him outside court.

The judge addressed Mangold and referenced the transcript from his plea hearing, highlighting portions relevant to Mangold's decision to enter his pleas in both cases. The judge found that there was nothing in Mangold's motion to support his allegations other than his word. The judge noted that Mangold's complaints about the arresting officer

6

were known when he entered his pleas, and—despite giving Mangold multiple opportunities to reconsider his decision to plead—Mangold gave the court no indication he was coerced into entering his pleas. The district court found there was no reasonable basis to grant Mangold's motion to withdraw his pleas and denied the motion.

*We see no abuse of discretion in denying the motion to withdraw his pleas.*

Mangold contends that his allegations of physical threats from a police officer established manifest injustice that would allow the withdrawal of his no contest pleas. He argues the district court must be reversed and he must be allowed to withdraw his pleas. The State contends that the district court properly denied Mangold's motion to withdraw his pleas and argues Mangold did not meet his burden to establish the district court abused its discretion. To address this question, we look first at the controlling statute and then two legal concepts: abuse of discretion and manifest injustice.

The controlling statute is K.S.A. 2018 Supp. 22-3210(d)(2). To correct manifest injustice the court, after sentence, may set aside the judgment of conviction and permit the defendant to withdraw the plea. An appellate court will not disturb a district court's denial of a postsentence motion to withdraw a plea without an abuse of discretion. *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018).

We turn now to the concept of abuse of discretion. A judicial action constitutes an abuse of discretion if

- no reasonable person would take the view adopted by the trial court;
- it is based on an error of law; or
- it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

7

An abuse of discretion occurs if discretion is guided by an erroneous legal conclusion or goes outside the framework of or fails to consider proper statutory limitations or legal standards. *State v. Collins*, 303 Kan. 472, 477, 362 P.3d 1098 (2015). The party asserting the trial court abused its discretion bears the burden of showing such abuse of discretion. *State v. Robinson*, 303 Kan. 11, 90, 363 P.3d 875 (2015) *disapproved on other grounds by State v. Cheever*, 306 Kan. 760, 402 P.3d 1126 (2017). Mangold does not specify in his brief how the district court abused its discretion. In the context of his argument, he appears to suggest the district court made an error of law.

That brings us to the second legal concept—manifest injustice. Cases have held the term means "something obviously unfair or shocking to the conscience." *State v. Barahona*, 35 Kan. App. 2d 605, 608-09, 132 P.3d 959 (2006). Three factors—often called the *Edgar* factors—generally guide a district court's consideration of whether a defendant has shown the manifest injustice required by the statute.

> (1) whether the defendant was represented by competent counsel;
>
> (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and
>
> (3) whether the plea was fairly and understandingly made. *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006)

The cases dealing with these factors offer some cautionary advice. The factors should not be applied mechanically and used to exclude other factors. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). These factors establish "'viable benchmarks'" for the district court when exercising its discretion, but the court should not ignore other facts that might exist in a particular case. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016); *State v. Moses*, 280 Kan. 939, 950-54, 127 P.3d 330 (2006).

Here, the court considered the *Edgar* factors. Mangold was represented by competent counsel at his plea hearing and entered into the pleas against his attorney's

advice. The transcript establishes that the district court asked many questions and talked with Mangold several times to ensure he understood his rights, his options, and the consequences of his decision. Mangold was adamant that he wanted to plead no contest to all 11 counts in the 2 cases. His pleas were fairly and understandingly made.

The basis for Mangold's motion is the second *Edgar* factor. He alleges that he was coerced into entering pleas in both cases because a law enforcement officer threatened to harm a family member or his children if he did not plead to all the charges. If a plea is "induced by promises or threats which deprive it of its voluntary character, it is void, and a conviction based thereon is open to collateral attack." *White v. State*, 203 Kan. 687, 690, 455 P.2d 562 (1969). Although Mangold was given a hearing on his motion, he provided the court with none of the evidence he claimed existed to support his allegation against the officer. The record does not show he tried to get the body-cam footage, and he did not call any of the 20 claimed witnesses he referred to in his motion.

We note that this postsentence motion was not the first time that he made these allegations. The record shows that shortly after entering his pleas, Mangold reported on his adult questionnaire for his presentence investigation report that the officer beat him up. And while he asked to file charges for police brutality, he was somehow denied the opportunity to do so. This report was completed at least two months before sentencing and three months before he moved to withdraw his pleas. The record gives no explanation why Mangold did not refer to this during his plea withdrawal hearing.

Finding no evidence of coercion, the district court determined there was not a reasonable basis to grant Mangold's motion. Mangold does not argue how the district court abused its discretion when it denied his motion. He only asserts that he "adequately alleged manifest injustice." But the burden is on Mangold to establish the district court abused its discretion and that the coercion was obviously unfair or shocking to the

9

conscience. See *Robinson*, 303 Kan. at 90; *Barahona*, 35 Kan. App. 2d at 608-09. Based on the record as a whole, Mangold has not met either burden.

Both the district court and Mangold's attorney went to great lengths to advise Mangold about the consequences of entering no contest pleas in his cases. But he was determined to plead. The timing of his motion to withdraw those pleas and the lack of evidentiary support for the motion lead us to conclude that the district court did not abuse its discretion in denying that motion. We affirm the denial of Mangold's motion to withdraw his pleas.

*We address some sentencing issues.*

The State concedes two of the arguments that Mangold raised about his sentences. First, Mangold notes that the journal entry in 17CR133 imposes a jail term of 10 months for possession of a hallucinogenic drug, a class A misdemeanor. He argues that this conflicts with the sentence of 10 days imposed from the bench. The State concedes that this sentence warrants a remand for a corrected journal entry. We remand the matter with instructions to correct the journal entry to reflect the correct jail term of 10 days.

Mangold also argues that the district court's imposition of a no-contact order as part of his sentence was illegal and should be vacated. The State concedes that this aspect of Mangold's sentences should be vacated. Following the directions of the Supreme Court in *State v. Bowen*, 299 Kan. 339, 359, 323 P.3d 853 (2014), we vacate the no-contact order.

We turn now to the sentencing issues that the parties still dispute. Mangold believes that the district court erred when it considered his prior convictions for felony drug possession in determining his conviction for felony drug possession in 17CR133 was his third such conviction, making it a presumptive prison sentence. Under K.S.A.

10

2018 Supp. 21-6805(f)(1), a third or subsequent felony conviction for drug possession calls for a presumptive prison sentence.

A prior conviction under the Kansas Sentencing Guidelines Act is any conviction, other than another count in the current case brought in the same charging document or joined for trial under K.S.A. 22-3203, that occurred before sentencing in the current case, regardless of whether the offense that led to the prior conviction occurred before or after the commission of the current offense or the conviction in the current case. K.S.A. 2018 Supp. 21-6810(a). The district court did not err in considering Mangold's prior felony convictions for drug possession in determining his sentence for felony drug possession in 17CR133.

Next, Mangold contends the court erred when it ordered consecutive sentences. Under K.S.A. 2018 Supp. 21-6606(d), a sentence for a crime committed while on release for felony bond is to be served consecutive to the terms under which the person was released. The district court did not err in ordering Mangold's sentence in 17CR133 to be consecutive to that in 17CR124.

Additionally, Mangold's controlling sentence in 17CR124 was the standard term of 30 months. His controlling term in 17CR133 was the mitigated term of 28 months. Both sentences were in the presumptive range. Mangold does not argue that the imposition of consecutive sentences resulted in manifest injustice. See K.S.A. 2018 Supp. 21-6819(a). Consecutive presumptive sentences under the Act are not appealable. *State v. Jacobs*, 293 Kan. 465, 466, 263 P.3d 790 (2011).

As for his sentences for the misdemeanor convictions, Mangold also believes that the district court erred when it imposed jail terms of 10 to 30 days for his five class A misdemeanor convictions in both cases. He acknowledges that his sentences were within the statutory range for the crimes. A criminal sentence within statutory limits will not be

11

disturbed on appeal absent a showing that the trial court abused its discretion or by a showing that the trial court acted with vindictiveness. *State v. Cooper*, 275 Kan. 823, 827, 69 P.3d 559 (2003). Mangold does not claim the district court abused its discretion or was vindictive when it sentenced him on any of his class A misdemeanors. Mangold has no right to relief on this point. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018).

Similarly, Mangold believes that his remaining three sentences in 17CR124 for his class B misdemeanor, his unclassified misdemeanor, and his traffic infraction were also imposed in error. Again, he acknowledges that his sentences were within the statutory range for the crimes, and he does not argue that the district court abused its discretion or was vindictive. See *Cooper*, 275 Kan. at 827; *Arnett*, 307 at 650. The district court did not err.

Mangold argues the district court erred in denying his motions for a dispositional departure. Under K.S.A. 2018 Supp. 21-6820(c)(1) this court is without jurisdiction to review the district court's denial of his motions.

Mangold also contends that the district court violated the rule in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), because the State did not prove his criminal history to a jury beyond a reasonable doubt before sentencing. But Mangold appears to acknowledge also that the Kansas Supreme Court considered and rejected similar arguments in *State v. Ivory*, 273 Kan. 44, 46-47, 41 P.3d 781 (2002).

The use of criminal history to calculate the presumptive guideline sentence does not violate due process as interpreted by *Apprendi*. See *State v. Sullivan*, 307 Kan. 697, 708-09, 414 P.3d 737 (2018). The district court did not violate Mangold's due process rights by considering his criminal history score at sentencing.

12

Finally, we consider Mangold's argument on the district court's order for him to pay BIDS attorney fees to be inadequately briefed and thus abandoned. His two-sentence paragraph contains no citation to the record and offers just a case citation. Issues not adequately briefed are considered waived or abandoned. *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 825 (2015).

Mangold's convictions are affirmed in both cases. We vacate the no contact order and remand the cases to correct the journal entry consistent with this opinion.